COURT ORIGINAL

FILED
AUG 25 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: Ray H. Woodruff, Sr.

Sui Juris/Petitioner

vs.

MICHAEL MUKASEY,
(U.S. Attorney General),
HARLEY LAPPIN,
(Director of FBOP),

Respondents.

C08-04045 MHP

Case Action No.

E-filing

Pursuant to Amendment I of the Constitution of the united States of America (1789) "Right to Petition the Government for Redress of Grievances Rule 12(b); 12(h)(i) and Rule 54(c); Request Order to Show Cause.

PETITION FOR A WRIT OF HABEAS CORPUS
AND ACTION FOR DECLARATORY JUDGMENT

TO; The U.S. Northern District Court of California.

Ray H. Woodruff, Sr., (Petitioner) respectfully alleges and shows;

Jurisdiction

1). Jurisdiction of this Court is invoked under the lawful provision of **28 USC § 1331; 28 USC §§ 2241, 2201, and Rule 54(c), on the behalf of:** KEVIN PAUL WOODRUFF (Seized Party), seeking service of his conviction and sentence under **(June 25, 1948, Public Law 80-772) absence of a Quorum** unconstitutional and without due process..

Standard For Review

2). Terlinden v. Ames, Ill 1902, 22 S Ct 484, 184 US 270, 46 L.Ed 534; and the Act of Congress, Rule 54(c) "It is made the duty of the Court or Judge to whom application is made for a writ of habeas corpus to be issue. United States v. Tod, 263 US 149.

**3).** This petition is in the "nature of the Great Writ of Habeas Corpus and represent Ray H. Woodruff's, Sr., on the behalf of "Rights to redress of Grievance; and what Act of Congress authorize said Criminal action **CR-93-0438-VRW** against KEVIN PAUL WOODRUFF my Son (hereinafter Seized Party).

## Statement of Facts

**4).** The facts which gave rise to Petitioner Right to petition the Courts for redress of grievance are contained in the Body of this Petition.

**5).** Petitioner ask this Court indulgence as I am pro se and In pro per illiterate at law; with a mere base in common law before the bench, attempting to sort out a redress against the legal minds of the United States Attorney General Office and their constitutents, and pray that the Honorable Court extend its lawful hand of right in Petitioner behalf and accept the sequence of events which led to the petitioner exercising his First Amendment right to redress of grievance.

**6).** That on November 27, 1954 my wife-Emma L. Woodruff gave birth to a son name KEVIN PAUL WOODRUFF in Marlin, Texas falls county Hospital, and thereafter in the year of 1959 myself, wife, and our three childrens move from Texas to the Great State of California

**7).** Many years later my son-Seized Party in the year of July 26, 1993, the Seized Party was Seized by the United States Federal Marshal's and brought before a Federal Judge, Judge Robert Coyle in Fresno, California, and due to the imporper venue the district court Judge Coyle issue-forth a Rule 40, transfering the case to its proper venue, (Northern District of California).

**8).** Thereafter on August 24, 1993 the Seized Party was indicted in federal court for **Hobbs Act title 18 USC § 1951 Racketeering provision of (June 25, 1948 Public Law 80-772).**

**Reason for Granting Habeas Corpus**

**A.**

**Whether the District Court Orders committing Seized Party to Executive Custody pursuant to section 3231 of the unconstitutional Public Law 80-772 were issued ultra vires, are unconstitutional and coram non judice, and Seized Party imprisonments are unlawful.**

**B.**

**Whether Public Law 80-772, Act of June 25, 1948, Ch. 645, Section 1, 62 Stat. 683 et seq., is unconstitutional and void because H.R. 3190 never passed both Houses as required by Article I, Section 7, Clause 2.**

**C.**

**Whether permitting post-adjournment legislative business pursuant to H.Con.Res. 219 violated the Quorum, Bicameral and Presentment Requirements of Article I of the Constitution.**

**9).** The legislative history of the June 25, 1948, amendments, changes and revisions to the **1909 Federal Penal and Criminal Code,** shows that Congressman Robsion of kentucky introduced **H.R. 3190 "A Bill To revise, codify,** and enact into positive law, **title 18 of the United States Code,** entitled 'Crimes and Criminal Procedure," in the U.S. House of Representatives to the Committee on the Judiciary, on April 24, 1947 **(H.Rpt. 304; H.Journ. 295; and 94 Cong. Rec. D556-D557).** Which was not simply codifications of existing law, undertook also to make changes in existing law to transfer the federal court's jurisdiction in criminal cases from **28 USC § 3231 (1940)** to create a new jurisdictional provision under **18 USC § 3231 (1948),** and it made conduct that was not a federal offense under the **1909 U.S. Code become federal crimes,** and changed the manner which federal sentences are to be executed.

**10).** These changes which were engrossed by a Vote taken in a minority presence on May 12, 1947, in the House of Representatives. Although, there were **435** people enrolled as sworn Members of our U.S. House of Representatives, but during the May 12, 1947, Vote on **H.R. 3190**, the Record of the 80th Congress, First Session shows that a Vote was taken by **38 ayes and 6 noes (44 Total),** but devoid of any number present but not voting sufficient to make a **Quorum** in the hall of the House, as required by House Rules and Hind's precedents mandating that the Clerk of the House is to "enter on the Journal as part of the record of a **yea-and-nay vote** the names of Members present but not voting, thereby establishing a quorum of record." **(See Cong. Rec. 5048-5049; H.Doc. No. 769, 79 Cong., 2nd Sess., Constitution, Jefferson's Manual and Rules of the House of Representatives of the United States, 80th Cong., G.P.O. 1947, § 54; and H.Doc. No. 355, 59th Cong., 2nd Sess., Hinds' Precedents of the House of Representatives of the United States, Vol. IV, §§ 2895, 2904, 2932, 2962, 2963).**

**11).** Compare the May 12, 1947, **44 Member Vote on H.R. 3190 (93 Cong. Rec. 5049),** with Mr. john Dingell's objection to the July 7, 1947, **103 Member vote on H.R. 3214 "A Bill To revise, codify,** and enact into law **Title 28 of the United States Code entitled** 'Judicial Code and Judiciary." **(93 Cong. Rec. 8391-8392).** Where Congressman John D. Dingell of Detroit Michigan, objected to there not being enough House Members present to make a Quorum. In his July 7, 1947 objection, Mr. Dingell states that "i object to the vote on the ground that a quorum is not present and make the point of order that a quorum is not present." Whereafter, the Speaker of the House stated that "obviously a quorum is not present," the Door Keeper closed the doors, the Sergeant of Arms notified the absent Members, and the clerk of the House called the roll and the Vote on **H.R. 3214** was taken anew, with previously absent Members present. With the record showing

**12)**. However, although the Congressional record is devoid of any Persons' Names voting for, against or present but not voting on the **H.R. 3190** Bill during or even after the May 12, 1947, **44 Member Vote,** the Journal of the House of Representatives contain no entry of the vote at all, notwithstanding the fact that the **H.R. 3190 Bill** had been met with opposition and caused a division in the House. **(See H.Journ. 343, 344, 346; and 93 Cong. Rec. 5049).**

**13)**. The Congressional Record and the Journal of the Senate show that although the **H.R. 3190 Bill** was sent to the Senate for consideration, that first regular session of the 80th Congress came to a close for more than 3 days on July 27, 1947 without any further action on it by the House or the Senate prior to the January 6, 1948, assembly of the 80th Congress, Second Session. **(See, S. Con. Res. 33; 93 Cong. Rec. 10400; S. Journ. 252, 259; Asheley v. Keith Oil Corp., 7 F.R.D. 589, 590 9D. Mass. 19470; and Amend., 20, U.S. Const.).** On June 20, 1948, the Senate and the U.S. House of Representatives closed their regular final legislative session without any record of the Names of the Persons voting for, against, or present but not voting on **H.R. 3190** in the Journals of either House to show that the vote on the Bill was passed in the presence of a **quorum.**

**14)**. On June 23, 1948, while Congress was "not sitting in regular or extraordinary session," the Speaker of the House signed the enrolled **H.R. 3190 Bill** in the absence of a Quorum. **(See, 94 Cong. Rec. 9158, 9349, 9354, 9365, 9367).** Which was also done in violation of Hinds' Precedents of the House, **§ 3458 (G.P.O. 1907),** stating that "The Speaker may not sign an enrolled bill in the absence of a quorum. " **H.R. 3214** was also signed by the Speaker of the House while Congress was "not sitting in regular or extraordinary session," in the absence of a quorum. **(See, also Commissioner v. Riveras, 214 F.2d 60, 64).**

**15).** On June 25, 1948, Harry S. Truman, as president of the United States signed **H.R. 3190** and **H.R. 3214** unaware that these bills had not actually passed in the presence of a Quorum or a majority of each House. **(See, 94 Cong. Rec. 9367).** Although this was not the first time that a U.S. president signed a bill that had not been actually passed. **See, § 3498** of Hinds' Precedents where "A Bill that had not actually passed, having been enrolled and signed by the President of the United States, was disregarded by the Executive, and Congress passed another Bill " in 1836, during the First Session of the 24th Congress.

**16).** Therefore, where the legislative chart which tracks the progress of **H.R. 3190** through both Houses of the 80th Congress show May 12, 1947, as its date of passage in the House, and based upon the foregoing facts and records, **H.R. 3190** was not enacted by the Senate and House of Representatives of the United States of America in Congress assembled, on June 25, 1948. because Congress was not sitting in regular or extraordinary session, when the Speaker of the House signed the enrolled bill in the absence of a Quorum, where the Journals are devoid of the names sufficient to form a quorum during the May 12, 1947 divided vote on the engrossed bill, and when the bills were given to the President of the United States for his approval or disapproval while Congress was not sitting in regular or extraordinary session, which he did sign while Congress was not assembled inany form of session

**17).** The face and the signatory of the enrolled **H.R. 3190** as the purported Public law **80-772** show only one date of June 25, 1948. Therefore even without going beyond the documents deposited in the National Archives and records Administration's own registered entries as maintained by the Secretary of State, **Public Law 80-772** is unconstitutional on its face, because **62 Stat. 1435-36, June 20, 1948,** show that no quorum was present on June 20, 1948, due to the undisputed fact that Congress was not sitting in regular or extraordinary, special, nor emergency session on June 25, 1948. Which is the date that the Honorable Joseph W. Martin, Jr., Speaker of the House **(a republican),** signatures appear along with the most Honorable Harry S. Truman, President of the United States of America **(a democat).** Thereby leading a reasonable person to believe without looking beyond the Bill deposited in the public archives that June 25, 1948, was the date that the presiding officers of both Houses signed **H.R. 3190** and presented it to the president.

**18).** The so-called Hobbs Act **18 USC § 1951 of (June 25, 1948, ch. 645 § 1, 62 Stat. 793 Sept 13, 1994 P.L. 103-322, Title XXXIII, § 330016(1) 108 Stat. 2147),** lack proper enactment of Congressional quorum. As a matter of first impression, Congressional terms and definition at **18 USC § 1951** would appear valid. However, upon closer scrutiny, certain fatal defact abound which renders the so-called **Hobbs Act** void upon its face, ab initio, as-applied and by extentsion any contemplated prosecution and/or prosecution invalid.

**19).** In respect to the above-styled (law?) two matters are obvious: **(1) June 25, 1948, ch 645 § 1, 62 Stat.** lack the required and Congressional-mandated **"Enacting Clause"; Present of Quorum; (2),** without said "Enacting Clause" Congress has decided **[not}** to lawfully impose their will upon **WE THE PEOPLE** whom reside in the several States party to the Constitution.

20). The Founding Fathers have set out the proper means for the **[enacting]** into law a Statute with teeth, **Section 101 of 61 Stat. Part 1 (80th Cong. 1st Sees-Ch 388-July 30, 1947 states in relevant part: ENACTING CLAUSE § 101.** The enactiing clause of all Acts of Congress shall be in the following form: **" be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled."**

21). Heretofore, any Statute and/or Code provision thereof [not] duly enacted into positive law, via a **Congressional Quorum and Enacting Clause § 101, supra is no law.** Statutes/legislation stripped of the mandated **" enacting clause and Congressional Quorum"** are void ab initio and no amount of amendment or definition can alter the will of the People or Congress. . .

22). The above-matter is well-settled by the Court . . . " In absence of legislation, however, the assumptions of individual Congressman about the status of the common law are not enacted into positive law. **See, County Oneida v. Oneida indian nation New York State et al., 470 US 226, 105 S.Ct. 1245 84 L.Ed 2d 169, (1985); also Miller v, Albright, 523 US 420, 118 S.Ct. 1428 L.Ed 2d 575 (1998).**

23). In short, an enacting clause emphatically demonstrates that Congress has imposed its will; however, the converse is equally true--the lack of an enacting clause and Congressional Quorum emphatically demonstrates that Congress has not imposed its will . . . Congress can not express its will by a failure to legislate. The act of refusing to enact a law (if that, Hobbs can be called an act0, has utterly no legal effect, and thus has utterly no place in a serious discussion of the law. **See, United States v. Estate of Romani, 523 US 517, 118 S.Ct. 1478, 140 L.Ed 2d 710 (1998).**

**24).** A law which imposes both the will of the legislature and carries a criminal penalty is [enacted] into positive law in only one mode . . . The Constitution sets forth the only manner in which the Members of Congress have the power to impose their will upon the country. By a Bill that passess both houses and is either signed by the President or repassed by a supermajority after his veto. **Article I, Section 7,. Id. Estate of Romani, supra; McElroy v. United States, 455 US 642, 102 S.Ct. 1332, 71 L.Ed 2d 522 (1982).**

**25).** Thus, all of the preceding points and authorities demonstrate that the Congressional Records Predecessor as-applied found at **18 USC § 1951,** cannot does not translate into Congressional Quorum imposition of will lacking an enacting clause making positive law enacted law. The so-called Hobbs Act, stripped of any Quorum and Enacting Clause, thus, in respect to this claim, well-founded in law, the invalidity of the contemplated agency prosecution and/or prosecution should rescinded as said [prosecution] constitute an **ultra vires act** under law.

**26).** Notwithstanding, the Administration [United States Government-Executive Branch], exceeded its lawful delegated authority via failure to give Notice of Rulemaking as required under operation of well-established law. **[1 CFR § 22.5, Administrative Procedure Act 5 USC § 553 et seq., Federal Register Act, 44 USC §§ 1501 to 1505]** The rule-making provisions of that Act were designed to assure fairness and mature consideration of rules of general application. **See H.R. Rep. No. 1980, 79 Cong., 2d Sess., 21-26 (1946); S.rep. No. 752, 79 Cong., 1st Sees., 13-16 (1945).**

**27).** Failure of Administration [prosecution], to promulgate required implementing regulations to bring the alleged statute **( Hobbs Act 18 USC § 1951)** into compliance with the law by statute, only the regulations that become published in the **Code of Federal Regulation** are considered agency documents that have **"legal Effect." See 44 USC § 1510(a).** Section § 1951 of Title 18 of the United States Code do not possess valid/lawful implementing regulations as required by law. Failure to publish in the Federal Register is indication that **Hobbs Act** in question was not meant to be a regulation. **See Brennan v. Ace hardware Corp., 495 F.2d 368, 376 (8th Cir. 1974).**

**28).** The Administration [Executive Branch], was mandated by Congress to promulgate implementing regulations pursuant to **18 USC § 1951** and [publish] the same as required by the Federal Register Act. it did not. Without the promulgation of said implementing regulations, the statute is left in limbo and vagueness. In respect to the Vagueness Doctrine, the Court held:

> **Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine the requirement that a legislature establish minimal guidelines to govern law enforcement. Smith, 415 US at 574.**
> **Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." See, Kolendar v. Lawson, S. Ct. No. 81-1320.**

**29).** Therefore, the Administration [Executive Branch], cannot hold the Seized Party administratively cupable. The Court stated that, "An individual can not be prosecuted for violating the Act unless he violates an implementing regulation." **United States v. Reinis, 794 F.2d 506 (9th Cir. 1986).**

## FIRST CAUSE OF ACTION

The acts and omissions of the respondents and the elected Members of the 80th Congress as set forth in the aforewritten Statement of Facts and supporting documents attached hereto show that they violated the **Quorum Clause mandate prescribed in Article I, § 5, CL. 1 of the U.S. Constitution when:**

**a. the vote taken by [38] yeas and [6] nays shows that no QUORUM had voted during the May 12, 1947, vote on H.R. 3190;**

**b. the Journal of the House failed to show that a MAJORITY OR QUORUM of its members were present when the H.R. 3190 Bill was passed;**

**c. the presence of a QUORUM was not determined in accordance with a valid rule of the House;**

**d. the NAMES OF MEMBERS present but not voting (if any), were not entered on the Journal as part of the YEA-AND-NAY vote on the H.R. 3190 Bill;**

**e. the NAMES OF THE PERSONS voting for and against the H.R. 3190 Bill were not entered on the Journal;**

**f. the Speaker of the House signed the enrolled H.R. 3190 in the absence of a QUORUM;**

**g. the H.R. 3190 Bill was signed by the presiding officers and presented to the President of the United States while both Houses of Congress were not sitting in regular or extraordinary session; and**

**h. they were placed on notice that the H.R. 3190 Bill was put into effect as law without being passed by a QUORUM or in the presence of a MAJORITY of both Houses, but failed or refused to investigate the origin of, or to disregard Public Law 80-772**

SECOND CAUSE OF ACTION

The acts and omission of the respondents and the elected Members of the 80th Congress as set forth in the aforewrittern Statement of Facts and supporting documents attached hereto show that they violated the APPROPRIATIONS CLAUSE mandate prescribed in ARTICLE I, § 9, CL. 7 of the U.S. Constitution when:

a. the journal of the House failed to show that MAJORITY or QUORUM of its members were present when 18 USC § 4007 was passed or signed by the presiding officers of both Houses; and

b. they allowed money to be drawn from the TREASURY under 18 USC § 4007, a law that was put into effect without duly enacted and without equal representation in Congress.

THIRD CAUSE OF ACTION

The acts and omission of the respondents and the elected Members of the 80th Congress as set forth in the aforewritten Statement of Facts and supporting documents attahced hereto show that they have been depriving the Seized Party of his LIBERTY WITHOUT DUE PROCESS of law in violation of the FIFTH, NINTH and FOURTEENTH AMENDMENTS to the Constitution where or when:

a. they acted in execution of the commitment order issued by a court acting without competent jurisdiction under 18 USC § 3231, which was not passed or signed in the presence of a QUORUM and took the Seized Party into the custody of the FBOP for the service of his sentence;

## CONTINUE THIRD CAUSE OF ACTION

b. they classified Seized Party according to the nature of the offenses committed for the service of his sentence under the system of DISCIPLINE, CARE, and TREATMENT prescribed in 18 USC § 4081 (June 25, 1948, c. 645, 62 Stat. 850), which was not passed in the presence of a QUORUM;

c. they use money paid out of the TREASURY of the UNITED STATES for the expenses attendant upon his confinement, as well as upon the execution of his sentence pursuant to 18 USC § 4007 (June 25, 1948, c. 645 Stat. 848), which was not passed in the presence of a QUORUM;

d. H.R. 3190 was signed by the Speaker of the House in the absence of a QUORUM, while Congress was not sitting in regular or extraordinary session;

e. they placed limitations on the Seized Party detention and control him under 18 USC § 4001 (June 25, 1948, c.645, 62 Stat. 847), which was not passed in the presence of a QUORUM;

f. they DENY the Seized Party a parole date that he is entitled to under the 1940 PREECESSOR'

g. they calculate his GOOD TIME CREDITS while acting under 18 USC § 4081;

h. they were placed on notice that the H.R. 3190 Bill was put into effect as law without being passed by a QUORUM or in the presence of a MAJORITY of both Houses, but failed or refused to investigate the origin of, or to disregard Public Law 80-772

CONTINUE THIRD CAUSE OF ACTION

i. they compel the Seized Party to identify with a particular religion under 18 USC § 4081;

j. they compel the Seized Party to pay $200.00 financial responsibility for each count of the indictment under 18 USC § 4081;

k. they compel the Seized Party to pay $625,000.00 restitution for the loss of the alleged victims in re: CR-93-0438-VRW, under 18 USC § 4081, which was not passed in the presence of a QUORUM;

l. they compel the Seized Party to work or program under 18 USC §§ 4081, 4121-4129;

m. they compel the Seized Party to complete "ABILITIES and RESPONSIBILIES," " BREAKING BARRIERS," " ACE" or "GED" type courses, "Drug Education," as a condition precedent prior to reducing his custody, security level or before he can become eligible for a transfer closer to home;

n. they use inmate labor to allow UNICOR to keep local companies from competing for labor, contracts and services that they would otherwise BID for with the government under 18 USC § 4081, 4121-4129.

NATURE OF THE RELIEF SOUGHT

Based on the aforewritten facts, claims and attachments Ray H. Woodruff, Sr., (Hereinafter Real Party In Interest) seeks relief as follows:

1. An evidentiry hearing.

2. A Trial By Jury on the claims for Declaratory Judgment.

3. To declare unconstitutional and void ab initio Public Law 80-772 which purported to enact 18 USC § 3231, Act of June 25, 1948, Chapter 645, § 1, 62 Stat. 826 which pur[orted to confer upon the district court of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States.

4. To declare unconstitutional and void ab initio Public Law 80-772 which purported to enact 18 USC § 4007, Act of June 25, 1948, Chapter 645, § 1, 62 Stat. 848 which purported to confer upon the Attorney General authority for the EXPENSES attendant upon the confinement of persons arrested or committed under the laws of the United States, as well as upon the execution of any sentence of a court thereof respecting them, to be paid out of the TREASURY of the United States.

5. To declare unconstitutional and ab initio Public Law 80-772 which purported to enact 18 USC § 4081, Act of June 25, 1948, Chapter 645, § 1, 62 Stat. 850 which purported to confer upon the Federal bureau of Prisons authority to classify and segregate Federal prisoners, and such other factors including religious identification as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed for the service of their sentence.

6. To declare unconstitutional and void ab initio Public Law 80-772 which purported to enact 18 USC § 4121-4129, Act of June 25, 1948, Chapter 645, § 1, 62 Stat. 851-853 which purported to confer upon the Attorney General authority to operate Federal Prison Industries, a government corporation of the DISTRICT OF COLUMBIA, to be carried in Federal penal and correctional institutions for the production of commodities for consumption in such institutions or for sale, to establish New industries to operate and maintain and use slave labor in Public Works, prison camps, and the power to force Federal Prison Industries or prisoners to act in SERVITUDE to said prison industrial complex.

7. A preliminary injunction prohibiting the respondents from APPROPRIATING FUNDS FROM THE U.S. TREASURY to pay the expenses attendant upon the commitment of persons arrested, committed or upon the execution of any sentence imposed by a court under Public Law 80-772.

8.A preliminary injunction prohibiting the respondents from classifying the Seized Party or forcing his to program, and from denying him to be release from the custody of the respondent pending final adjudication.

9. A preliminary injunction enjoining respondents from compelling the Seized Party to comply with their financial responsibility program.

10. A preliminary injunction enjoining respondents from retaliation against the Seized Party and to transfer the Seized Party alone with all of his property to Northern District of California, Detention Center pending this litigation; and/or;

11. Issue a Writ of Habeas Corpus directing the respondents to RELEASE the Seized Party-WOODRUFF KEVIN PAUL, from the care, custody and control of the United States of America's Department of Justice.

12. A preliminary injunction enjoining respondents from operating UNICOR or from operating UNICOR or any other Prison industry without paying inmates at least minimum wages.

I, Ray h. Woodruff, Sr., (hereinafter Real Party In Interest) Declare under pains, penalty of perjury that I believe that the herein mentioned is true, correct and not meant to mislead, and the foregonig Petition For A Writ Of Habeas Corpus/Declaratory Judgment and all that of the facts as stated herein are true and correct.

Respectfully Submitted;

Dated: 08/25/08, 2008

L.S. Ray H Woodruff
Ray H. Woodruff, Sr., Petitioner/
Real Party In Interest

# CERTIFICATE OF SERIVCE

*I, RAY H. WOODRUFF, SR., (REAL PARTY IN INTEREST) hereby certify that I this day served a copy of the foregoing document title (WRIT OF HABEAS CORPUS) upon the opposing party ( Respondents), and/or their agent commonly known as UNITED STATES ATTORNEY-Scott M. Schools for the Northern District of California, located at 450 Golden Gate Avenue, Courthouse, San Francisco, California 94102 by hand delivery and/or by depositing a copy with exhibits in the United States mail with proper postage affixed thereon and addressed as stated above.*

*This* 25 *day of* Aug *, 2008*

*L.S.* Ray H Woodruff Sr

*Ray H. Woodruff, Sr., Petitioner*
*1893 Benedict Drive*
*San Leandro, California, [Near]*
*94577*
*(510) 347-1380*

79th Congress, 2d Session House Document No. 769

# CONSTITUTION
# JEFFERSON'S MANUAL
AND
# RULES OF THE HOUSE OF REPRESENTATIVES
OF THE UNITED STATES
EIGHTIETH CONGRESS

By
LEWIS DESCHLER
PARLIAMENTARIAN

[illegible]RARY
Austin, Texas

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

The statutes of the United States provide specific methods for institution of a contest as to the title to a seat in the House (I, 678, 697-706); but the House regards this law as not of absolute binding force, but rather a wholesome rule not to be departed from except for cause (I, 597, 719, 825, 833), and it sometimes by resolution modifies the procedure prescribed by the law (I, 449, 600).

**§ 51. Laws of Congress not binding on the House in its function of judging its elections.**

Decisions of the Supreme Court of the United States:

Reed *v.* County Commissioners, 277 U. S., 376; Barry *v.* U. S. ex. rel. Cunningham, 279 U. S., 597.

* * * and a Majority of each [House] shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

**§ 52. The quorum.**

Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constituted the quorum required by the Constitution (IV, 2885-2888); but later examination has resulted in a decision confirming in the House of Representatives the construction established in the Senate that a quorum consists of a majority of Senators duly chosen and sworn (I, 630; IV, 2891-2894). So the decision of the House now is that after the House is once organized the quorum consists of a majority of those Members chosen, sworn, and living whose membership has not been terminated by resignation or by the action of the House (IV, 2889, 2890). (Speaker Clark, May 9, 1913, Record, p. 1457, 63d Cong., 1st sess.)

**§ 53. Interpretation of the Constitution as to number constituting a quorum.**

For many years the quorum was determined only by noting the numbers of Members voting (IV, 2896, 2897), with the result that Members by refusing to vote could often break a quorum and obstruct the public business (II, 1034; IV, 2895, footnote; V, 5744). But in 1890 Mr. Speaker Reed directed the Clerk to enter on the Journal as part of the record of a yea-and-nay vote names of Members present but not voting, thereby establishing a quorum of record (IV, 2895). This decision, afterwards sustained by the Supreme Court (IV, 2904),

**§ 54. The theory of the quorum present; and the count by the Speaker.**

App. 2

established the principle that a quorum present made valid any action by the House, although an actual quorum might not vote (I, 216, footnote; IV, 2932). And thenceforth the point of order as to a quorum was required to be that no quorum was present and not that no quorum had voted (IV, 2917). At the time of the establishment of this principle the Speaker revived the count by the Chair as a method of determining the presence of a quorum at a time when no record vote was ordered (IV, 2909). The Speaker has permitted his count of a quorum to be verified by tellers (IV, 2888), but did not concede it as a right of the House to have tellers under the circumstances (IV, 2916), claiming that the Chair might determine the presence of a quorum in such manner as he should deem accurate and suitable (IV, 2932). The Chair counts all members in sight, whether in the cloak rooms or within the bar (IV, 2970). Later, as the complement to the new view of the quorum, the early theory that the presence of a quorum is as necessary during debate or other business as on a vote was revived (IV, 2935–2949); also, a line of rulings made under the old theory were overruled, and it was established that the point of no quorum might be made after the House had declined to verify a division by tellers or the yeas and nays (IV, 2918–2926).

§ 55. Relations of the quorum to acts of the House.

The absence of a quorum having been disclosed, there must be a quorum of record before the House may proceed to business (IV, 2952, 2953), and the point of no quorum may not be withdrawn after the absence of a quorum has been ascertained and announced by the Chair (IV, 2928–2931). But when an action has been completed, it is too late to make the point of order that a quorum was not present when it was done (IV, 2927). But where action requiring a quorum was taken in the ascertained absence of a quorum by ruling of a Speaker pro tempore, the Speaker on the next day ruled that the action was null and void (IV, 2964). But such absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason (IV, 2962), and where the assumption that a quorum was present when the House acted was uncontradicted by the Journal, it was held that this assumption might not be overthrown by expressions of opinion by Members individually (IV, 2961 . A point of no quorum may prevent the report of the Chairman of a Committee of the Whole. (Speaker Gillett, Dec. 13, 1924, p. 624, 68th Cong., 2d sess.) If a question as to a quorum is raised before the reading of the Journal, a quorum must be ascertained before the reading may begin (IV, 2732, 2733). While messages are received in the absence of a quorum they are not read (IV, 3522; V, 6600, 6650). No motion is in order on the failure of a quorum but the motions to

THE STATE LIBRARY
AUSTIN, TEXAS

59TH CONGRESS } 2d Session } HOUSE OF REPRESENTATIVES { DOCUMENT { No. 355

# HINDS' PRECEDENTS

OF THE

# HOUSE OF REPRESENTATIVES

OF THE

# UNITED STATES

INCLUDING REFERENCES TO PROVISIONS
OF THE CONSTITUTION, THE LAWS, AND DECISIONS
OF THE UNITED STATES SENATE

By
ASHER C. HINDS, LL. D.
Clerk at the Speaker's Table

VOLUME IV

PUBLISHED BY AUTHORITY OF THE ACT OF CONGRESS
APPROVED MARCH 4, 1907

WASHINGTON
GOVERNMENT PRINTING OFFICE
1907

# Chapter LXXXV.*

## THE QUORUM.[1]

1. Provision of the Constitution. Section 2884.
2. Interpretation of the Constitutional provision. Sections 2885–2894.
3. Ruling of Mr. Speaker Reed as to quorum present. Sections 2895–2904.
4. Rule for counting a quorum and its interpretation. Sections 2905–2908.[2]
5. Reestablishment of the Speaker's count. Section 2909.[3]
6. Review of Senate practice. Sections 2910–2915.[4]
7. Speaker's count final. Section 2916.
8. Making the point of no quorum. Sections 2917–2931.
9. All business, including debate, suspended by failure of quorum. Sections 2932–2965.[5]
10. Failure of quorum in Committee of the Whole. Sections 2966–2979.

**2884. A majority of the House constitutes a quorum to do business.**—The Constitution of the United States provides in Article 1, section 5, that—

A majority of each [House] shall constitute a quorum to do business.

**2885. Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constitutes the quorum required by the Constitution.**—On July 19, 1861,[6] Mr. Charles B. Sedgwick, of New York, moved the previous question on the engrossment of a joint resolution to provide for the selection of a site for the Naval Academy. Fifty-two Members having voted in favor of and 41 Members having voted against seconding the same, the Speaker[7] declared that the previous question was seconded.[8]

* See Volume VI, Chapter CCVIII.
[1] A majority of a committee is a quorum. Section 4540 of this volume.
Quorum of Senate sitting for impeachment trial. Section 2063 of Volume III.
Senate counted during impeachment trial. Section 2105 of Volume III.
As to quorum of managers in impeachment trial. Section 2035 of Volume III.
[2] Principle that legislator detained by force may be counted. Section 350 of Volume I.
[3] See also section 1653 of Volume III.
Illustration of former practice of accertaining presence of. Section 2733 of this volume.
[4] Elaborate Senate discussion. Section 630 of Volume I.
[5] Oath administered to Members in absence of. Sections 174–178 of Volume I.
Must be present before reading of Journal. Section 2733 of this volume.
Motion to reconsider in absence of. Sections 5606–5608 of Volume. V.
Point of no quorum held dilatory. Sections 5724–5730 of Volume V.
[6] First session Thirty-seventh Congress, Journal, p. 117; Globe, p. 210.
[7] Galusha A. Grow, of Pennsylvania, Speaker.
[8] The previous question no longer requires a second. (See sec. 5443 of Vol. V of this work.)

The Speaker[1] overruled the point of order on the ground that when the order was made the absence of a quorum was not disclosed by any proceeding in the House and did not appear in the Journal of the House, and that the statements of Members on the subject were merely expressions of their individual opinions.

**2962. The absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason.**—On June 9, 1856,[2] Mr. George W. Jones, of Tennessee, moved that the Journal of the preceding legislative day be amended by striking out the notice of a bill filed by Mr. Edwards, there being no quorum present on that day.[3]

It was objected in opposition to this motion that the Journal of that day did not show the absence of a quorum; but Mr. Jones urged that it was a matter of common knowledge that there was no quorum present. This was not denied.

Various attempts to dispose of the motion were made, but failed for lack of a quorum until June 20, when Mr. Jones's motion was laid on the table, yeas 89, nays 38.

**2963. When a vote taken by yeas and nays shows that no quorum has voted it is the duty of the Chair to take notice of that fact.**—On June 5, 1884,[4] the House having under consideration a bill forfeiting certain land grants, the yeas and nays were ordered and taken on the passage of the bill. After the vote had been taken the Speaker[5] announced that no quorum had voted and that the bill had not passed.

Upon the question being made by Mr. Poindexter Dunn, of Arkansas, that no Member had made the point that a quorum had not voted, the Speaker decided that when a vote was taken by yeas and nays it would be entered on the Journal of the House, and it was the duty of the Chair to take notice of the fact that a quorum had not voted and that the bill had not passed by a constitutional vote.

**2964. The previous question having been ordered on a bill by unanimous consent in the absence of a quorum, the Speaker on the next day ruled that the action was null and void.**—On February 19, 1873,[6] pending the demand for the previous question on the bill of the House (No. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by the States in the war of 1812, a quorum failed to vote and a call of the House was ordered. After the roll had been called, the doors closed, and excuses offered, on motion of Mr. Leonard Myers, of Pennsylvania, by unanimous consent, this order was agreed to.

*Ordered*, That all further proceedings under the call be dispensed with, that the previous question shall be considered as seconded, and the main question ordered, upon the bill of the House (H. R. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by said States in the war of 1812, and that the House shall now adjourn.

The House accordingly, at 12 o'clock m., adjourned.

On the next day, the Journal having been read, Mr. Nathaniel P. Banks, of Massachusetts, made the point of order that the main question on the bill of the

[1] Charles F. Crisp, of Georgia, Speaker.

[2] First session Thirty-fourth Congress, Journal, pp. 1079, 1095; Globe, pp. 1379, 1427.

[3] Formerly bills were introduced by leave, and a previous notice was required.

[4] First session Forty-eighth Congress, Journal, p. 1385.

[5] John G. Carlisle, of Kentucky, Speaker.

[6] Third session Forty-second Congress, Journal, p. 447; Globe, p. 1518.

Objection having been made, the following resolution was offered by Mr. John Dalzell, of Pennsylvania, and agreed to by the House:

*Ordered*, That the clerk be directed to return to the Senate the enrolled bill (S. 5718) providing for the sale of sites for manufacturing or industrial plants in the Indian Territory, with the information that the House has considered the request of the Senate that the House vacate the action of the Speaker in signing said enrolled bill, and that the unanimous consent necessary to enable such action to be taken was refused.

**3458. The Speaker may not sign an enrolled bill in the absence of a quorum.**—On May 20, 1826,[1] Mr. Jacob Isacks, of Tennessee, from the Joint Committee for Enrolled Bills, reported that the committee had examined an enrolled bill entitled "An act making appropriations for the public buildings in Washington, and for other purposes," and had found the same to be duly enrolled.

When, a quorum not being present, objection was made by a Member to signing the said bill by the Speaker.[2]

And thereupon the House adjourned.

**3459. Proceedings in correcting an error where the Speaker had signed the enrolled copy of a bill that had not passed.**—On March 14, 1864,[3] the Speaker stated to the House that—

the Secretary of the Senate having inadvertently, on Friday last, announced the passage by the Senate of the Court of Claims bill No. 116, instead of the bill of the House (H. R. 116), and having since corrected said error by certifying to the bill which actually did pass, the Speaker, with the consent of the House, will cause the Journal of that day to be amended by the insertion of the title of the bill which actually passed, in lieu of the one originally announced; and when reported by the committee he will sign the proper enrolled bill, canceling his signature of H. R. C. C. 116.

The unanimous consent of the House was given to the course indicated by the Speaker.[4]

**3460. It is a common occurrence for one House to ask of the other the return of a bill, for the correction of errors or otherwise.**—On April 11, 1810,[5] the House proceeded to consider the amendments of the Senate to the bill entitled "An act regulating the Post-Office Establishment."

Mr. Ezekiel Bacon, of Massachusetts, moved that the following words, "Section 25, lines 2 and 3, strike out the words 'each postmaster, provided each of his letters or packets shall not exceed half an ounce in weight,'" appearing to have been an interpolation in the amendments sent from the Senate after the same were received by this House, be expunged therefrom.

Pending consideration a message was received from the Senate requesting the return of the bill and amendments,

it having been discovered that an inaccuracy had taken place in stating the amendments of the Senate.

The House ordered the bill returned, and the same day a message from the Senate returned to the House the corrected amendments.

---

[1] First session Nineteenth Congress, Journal, p. 639.

[2] John W. Taylor, of New York, Speaker.

[3] First session Thirty-eighth Congress, Journal, p. 377; Globe, p. 1096.

[4] Schuyler Colfax, of Indiana, Speaker.

[5] Second session Eleventh Congress, Journal, pp. 355, 356 (Gales and Seaton ed.); Annals, pp. 650 (Vol. I) and 1769 (Vol. II).

and figures 'approved March 12, 1863,' are in the handwriting of the President, and followed by his signature."

Thus it appears, from the original files in the State Department, that said act was approved March 12, 1863, and this is true, in fact, as to the date of approval.

The section of the Constitution of the United States bearing upon this question reads as follows:

"If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress, by their adjournment, prevent its return, in which case it shall not be a law."

The committee are informed that in the great press of business immediately preceding the adjournment of Congress on the 4th of March, 1863, the act which is made the subject-matter of inquiry by the resolution of the House was passed to the Secretary of the Treasury for examination, as it related particularly to his Department. It did not reach the President again until after the adjournment of Congress, when it was approved by him under the belief that the last clause of the section of the Constitution, above quoted, was designed more especially to prevent Congress from enacting laws without the approval of the Executive, which might be done by the passage of bills by the two Houses, followed by an adjournment, before the President could examine and return them, were it not for the declaration that in such cases the bills shall not be laws; and did not relate to cases wherein the Executive should approve bills sent to him by Congress within ten days, even though an adjournment should occur before the return of the bills.

That there is force and plausibility in this position, a little reflection will discover to any mind; but the committee can not receive it as a correct interpretation of the Constitution.

The ten days' limitation contained in the section above quoted refers to the time during which Congress remains in session, and has no application after adjournment. Hence, if the Executive can hold a bill ten days after adjournment, and then approve it, he can as well hold it ten months before approval. This would render the laws of the country too uncertain, and could not have been intended by the framers of the Constitution.

The spirit of the Constitution evidently requires the performance of every act necessary to the enactment and approval of laws to be perfect before the adjournment of Congress.

The committee, therefore, conclude that the act referred to, approved March 12, 1863, is not in force; and in this conclusion the committee are unanimous.[1]

**3498. A bill that had not actually passed, having been enrolled and signed by the President of the United States, was disregarded by the Executive, and Congress passed another bill.**—On March 11, 1836,[2] the House considered a joint resolution (No. 2) to place the name of Benedict Alford on the pension roll. The Debates of March 18,[3] give the following explanation of the presentation of this resolution:

At the first session of the Twenty-third Congress a bill passed the House of Representatives granting pensions to Benedict Alford and Robert Brush, soldiers of the Revolutionary war. By the Journals of the Senate it appears that this bill was indefinitely postponed in that body, and the House of Representatives was so notified. And it is also so entered on the Journal of the House. The postponement of the bill in the Senate in the last hour of the session was inadvertently overlooked by the enrolling clerk, as well as by the Committee on Enrolled Bills in the House, and it was enrolled and signed by the officers of the two Houses, and presented to, and approved by, the President. A few days after the adjournment of Congress the error was discovered in the Clerk's office in the House of Representatives, and notice of the fact was immediately given to the War Department. The Secretary of War thereupon declined complying with the provisions of the bill, under the conviction that it was not a valid statute. At the last session of Congress the President communicated the fact to the Senate by message. No

[1] The act of July 2, 1864 (13 Stat. L., p. 375), was amendatory of the act "approved March 12, 1863," thereby indicating that the latter act was still considered a law. (See Globe, first session, thirty-eighth Congress, p. 2820, for debate on the bill S. 232.)

[2] First session Twenty-fourth Congress, Journal, pp. 470, 498, 525, 526; Debates, pp. 2747, 2881.

[3] Debates, p. 2881.

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two law-publishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and, in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.

This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that they were purely a codification. But there are some changes in this bill (H. R. 3198), I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6.

So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

Quorum violated Here



93 Cong Rec 5049

9

or a lesser amount of excessive profits than that determined against him. The proceeding was declared to be a trial de novo. They are heard and decided, as in tax cases, on the issues drawn and pleaded by the pleadings filed.

The above history clearly indicates that Congress created a court and made it quite obvious that the creation of a court was intended.

Mr. KEATING. Mr. Speaker, this bill so forcefully presented by the distinguished gentleman from Kentucky [Mr. ROBSION], who has labored extensively and ably in the field of codification of the laws, deserves the support of this body.

The most important change in existing law is to make the Tax Court a judicial rather than an administrative body. The hearings before the Committee on the Judiciary, especially the testimony of the present presiding judge of the court, convince me beyond a doubt that this change should be made.

I am happy that the committee has accepted an amendment at the end of section 2560 to provide as follows:

> No qualified person shall be denied admission before such court because of his failure to be a member of any profession or calling.

Considerable doubt has been raised that the conversion of this body to a court of record might prevent practice before it by anyone other than a member of the bar. As a lawyer, I would be the last to contend that a legal training is not highly desirable for a practitioner before the Tax Court. In all fairness, however, we must recognize that the litigation which comes before that court is often of a peculiarly technical character which circumstances may dictate can best be presented by a certified accountant, or in part by a lawyer and in part by one skilled in figures. To compel membership in the bar is a condition precedent to practice in this court would be a departure from precedent which I do not feel prepared to take.

In many of these important cases it is desirable and in the interests of the litigant for lawyers and accountants to associate in the prosecution of the case. It would be a mistake, in my judgment, for Congress to interfere with this practice. The situation regarding this court seems to be quite different from other judicial bodies in this respect. To deprive accountants by legislative enactment of the right to practice before the Tax Court after it becomes a judicial body, while perhaps advantageous to lawyers, would deprive qualified nonlawyers of a valuable right without a showing of correlative advantage to the litigants, who in good conscience should be the object of our chief concern in the consideration of this legislation.

I urge support of this amendment and this bill.

The SPEAKER. The question is on suspending the rules and passing the bill.

The question was taken; and on a division (demanded by Mr. DINGELL) there were ayes 91, noes 12.

Mr. DINGELL. Mr. Speaker, I object to the vote on the ground that a quorum is not present and make the point of order that a quorum is not present.

The SPEAKER. Obviously a quorum is not present.

The Doorkeeper will close the doors, the Sergeant at Arms will notify absent Members, and the Clerk will call the roll.

The question was taken; and there were—yeas 342, nays 23, not voting 65, as follows:

[Roll No. 100]

YEAS—342

Abernethy
Albert
Allen, Calif.
Allen, Ill.
Allen, La.
Almond
Andersen, H. Carl
Andresen, August H.
Andrews, Ala.
Angell
Arnold
Auchincloss
Bakewell
Banta
Barrett
Bates, Ky.
Battle
Beall
Bockworth
Bell
Bennett, Mo.
Bishop
Blackney
Blatnik
Boggs, Del.
Boggs, La.
Bonner
Boykin
Bradley
Bramblett
Brehm
Brooks
Brophy
Brown, Ga.
Brown, Ohio
Bryson
Buchanan
Buck
Buckley
Buffett
Bulwinkle
Burke
Burleson
Busbey
Byrne, N. Y.
Canfield
Carroll
Carson
Case, N. J.
Case, S. Dak.
Celler
Chadwick
Chapman
Chelf
Chenoweth
Chiperfield
Church
Clason
Clements
Clevenger
Clippinger
Coffin
Cole, Kans.
Colmer
Combs
Cooley
Corbett
Cotton
Cox
Cravens
Crawford
Crosser
Crow
Cunningham
Curtis
Dague
Davis, Ga.
Davis, Tenn.
Davis, Wis.
Dawson, Utah
Deane
Delaney
Devitt
D'Ewart
Dirksen
Dolliver
Domengeaux
Dondero
Donohue
Dorn
Drewry
Elliott
Ellis
Ellsworth
Elsaesser
Engel, Mich.
Engle, Calif.
Evins
Fallon
Feighan
Fenton
Fernandez
Fisher
Flannagan
Fletcher
Fogarty
Foote
Fulton
Gallagher
Gamble
Gary
Gathings
Gavin
Gillette
Gillie
Goff
Goodwin
Gordon
Gore
Gorski
Gossett
Graham
Granger
Grant, Ala.
Griffiths
Gwinn, N. Y.
Gwynne, Iowa
Hagen
Hale
Hall, Leonard W.
Halleck
Hand
Hardy
Harless, Ariz.
Harness, Ind.
Harris
Harrison
Havenner
Hays
Hedrick
Heffernan
Herter
Heselton
Hess
Hill
Hinshaw
Hobbs
Hoeven
Hoffman
Holifield
Holmes
Horan
Howell
Huber
Jackson, Calif.
Jackson, Wash.
Jarman
Javits
Jenkins, Ohio
Jenkins, Pa.
Jennings
Jensen
Johnson, Calif.
Johnson, Ill.
Johnson, Ind.
Johnson, Tex.
Jonkman
Judd
Karsten, Mo.
Kearney
Kearns
Keating
Keefe
Kefauver
Kennedy
Keogh
Kersten, Wis.
Kilday
Kirwan
Klein
Kunkel
Landis
Lane
Larcade
Latham
Lea
LeCompte
LeFevre
Lemke
Lewis
Lodge
Love
Lucas
Lusk
Lyle
McConnell
McCormack
McCowen
McDonough
McDowell
McGarvey
McGregor
McMahon
McMillan, S. C.
McMillen, Ill.
Macy
Madden
Mahon
Maloney
Manasco
Mansfield, Mont.
Marcantonio
Martin, Iowa
Mathews
Meade, Md.
Merrow
Meyer
Michener
Miller, Calif.
Miller, Conn.
Miller, Md.
Miller, Nebr.
Mills
Monroney
Morgan
Morris
Morrison
Morton
Muhlenberg
Mundt
Murdock
Murray, Tenn.
Murray, Wis.
Nixon
Nodar
Norblad
Norrell
O'Brien
O'Hara
O'Konski
O'Toole
Pace
Passman
Patman
Patterson
Peterson
Phillips, Tenn.
Pickett
Ploeser
Poage
Potts
Poulson
Preston
Price, Fla.
Price, Ill.
Priest
Rabin
Rains
Ramey
Rankin
Rayfiel
Redden
Reed, Ill.
Rees
Reeves
Rich
Richards
Riehlman
Riley
Rivers
Rizley
Robertson
Robsion
Rockwell
Rogers, Fla.
Rogers, Mass.
Rohrbough
Rooney
Ross
Russell
Sabath
Sadlak
Sadowski
St. George
Sanborn
Sarbacher
Sasscer
Schwabe, Mo.
Schwabe, Okla.
Scoblick
Scott, Hardie
Scott, Hugh D., Jr.
Seely-Brown
Sikes
Simpson, Ill.
Simpson, Pa.
Smathers
Smith, Kans.
Smith, Maine
Smith, Va.
Smith, Wis.
Snyder
Somers
Spence
Springer
Stanley
Stefan
Stevenson
Stigler
Stockman
Stratton
Sundstrom
Taber
Talle
Teague
Thomas, N. J.
Thomas, Tex.
Thomason
Tibbott
Tollefson
Towe
Trimble
Twyman
Vail
Van Zandt
Vursell
Walter
Welchel
Wheeler
Whitten
Whittington
Williams
Wilson, Ind.
Wilson, Tex.
Winstead
Wolcott
Wolverton
Wood
Woodruff
Worley
Youngblood
Zimmerman

NAYS—23

Anderson, Calif.
Byrnes, Wis.
Camp
Cannon
Cooper
Dingell
Doughton
Eberharter
Folger
Forand
Gearhart
Grant, Ind.
Hull
Jenison
Kean
King
Knutson
Lynch
Mason
Owens
Phillips, Calif.
Reed, N. Y.
Wigglesworth

NOT VOTING—65

Andrews, N. Y.
Arends
Barden
Bates, Mass.
Bender
Bennett, Mich.
Bland
Bloom
Bolton
Butler
Clark
Cole, Mo.
Cole, N. Y.
Coudert
Courtney
Dawson, Ill.
Douglas
Durham
Eaton
Elston
Fellows
Fuller
Gifford
Gregory
Gross
Hall, Edwin Arthur
Hart
Hartley
Hébert
Hendricks
Hope
Johnson, Okla.
Jones, Ala.
Jones, N. C.
Jones, Ohio
Jones, Wash.
Kee
Kelley
Kerr
Kilburn
Lanham
Lesinski
Mack
MacKinnon
Mansfield, Tex.
Meade, Ky.
Mitchell
Norton
Peden
Pfeifer
Philbin
Plumley
Powell
Rayburn
Scrivner
Shafer
Sheppard
Short
Smith, Ohio
Taylor
Vinson
Vorys
Wadsworth
Welch
West

So (two-thirds having voted in favor thereof) the rules were suspended and the bill was passed.

The Clerk announced the following pairs:

Additional general pairs:

Mr. Arends with Mr. Sheppard.
Mr. Bates of Massachusetts with Mr. Bloom.
Mr. Hope with Mr. Courtney.
Mr. Hartley with Mr. Gregory.
Mr. Jones of Washington with Mr. Hébert.
Mr. Gifford with Mr. West.
Mr. Mitchell with Mr. Jones of North Carolina.
Mr. Eaton with Mr. Vinson.
Mr. Mack with Mr. Hendricks.
Mr. Shafer with Mr. Kee.
Mr. Jones of Ohio with Mr. Kerr.

Mr. RANKIN changed his vote from "nay" to "yea."

The result of the vote was announced as above recorded.

The doors were opened.

A motion to reconsider was laid on the table.

Mr. ROBSION. Mr. Speaker, I ask unanimous consent that the printing of the bill in the RECORD be dispensed with but that the amendments be printed.

The SPEAKER. Is there objection to the request of the gentleman from Kentucky?

There was no objection.

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES OF THE UNITED STATES

## EIGHTIETH CONGRESS
## FIRST SESSION

BEGUN AND HELD AT THE CITY OF WASHINGTON : : JANUARY 3, 1947

IN THE ONE HUNDRED AND SEVENTY-FIRST YEAR OF THE INDEPENDENCE OF THE UNITED STATES

Prepared under the direction of
John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff, Journal Clerk and Raymond P. Johnson, and Thomas H. Cleary, Assistant Journal Clerks

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES

## CONGRESS OF THE UNITED STATES

Begun and held at the Capitol, in the city of Washington, in the District of Columbia, on Friday, the 3d day of January, in the year of our Lord nineteen hundred and forty-seven, being the *first session* of the EIGHTIETH CONGRESS, held under the Constitution of the Government of the United States, and in the one hundred and seventy-first year of the Independence of the United States.

### FRIDAY, JANUARY 3, 1947

On which day, being the day fixed by the Constitution of the United States, as amended, for the meeting of Congress, Ralph R. Roberts, Doorkeeper of the House of Representatives, at the hour of 12 o'clock noon, called the House to order, and proceeded to call the roll of Members-elect by States whose credentials had been received, when the following Members-elect answered:

[Roll No. 1]

*From the State of—*

ALABAMA

Boykin, Hobbs, Battle
Grant, Rains
Andrews, Jarman, Manasco

ARIZONA

Harless, Murdock

ARKANSAS

Gathings, Cravens, Norrell
Mills, Hays, Harris
Trimble

CALIFORNIA

Lea, Gearhart, Bradley
Engle, Elliott, Holifield
Johnson, Bramblett, Hinshaw
Havenner, Nixon, Sheppard
Welch, Poulson, Phillips
Miller, McDonough, Fletcher
Allen, Jackson
Anderson, King

COLORADO

Carroll, Chenoweth, Rockwell
Hill

CONNECTICUT

Miller, Foote, Patterson
Seely-Brown, Lodge, Sadlak

DELAWARE

Boggs

FLORIDA

Peterson, Sikes, Hendricks
Price, Smathers, Rogers

GEORGIA

Preston, Davis, Wheeler
Cox, Vinson, Wood
Pace, Lanham, Brown
Camp

IDAHO

Goff, Sanborn

ILLINOIS

Dawson, Church, McMillen
Vail, Reed, Simpson
Busbey, Mason, Howell
Gorski, Allen, Price
Sabath, Johnson, Vursell
O'Brien, Chiperfield, Clippinger
Owens, Dirksen, Bishop
Gordon, Arends, Stratton
Twyman, Jenison

INDIANA

Madden, Harness, Mitchell
Halleck, Johnson, Wilson
Grant, Landis, Springer
Gillie

IOWA

Martin, LeCompte, Jensen
Talle, Cunningham, Hoeven
Gwynne, Dolliver

KANSAS

Cole, Meyer, Hope
Scrivner, Rees, Smith

KENTUCKY

Gregory, Chelf, Meade
Clements, Spence, Bates
Morton, Chapman, Robsion

LOUISIANA

Hébert, Brooks, Larcade
Boggs, Passman, Allen

MAINE

Hale, Smith, Fellows

MARYLAND

Miller, D'Alesandro, Sasscer
Meade, Fallon, Beall

MASSACHUSETTS

Heselton, Bates, Kennedy
Clason, Lane, McCormack
Philbin, Goodwin, Wigglesworth
Donohue, Gifford, Martin
Rogers, Herter

MICHIGAN

Sadowski, Wolcott, Coffin
Michener, Crawford, Youngblood
Shafer, Engel, Dingell
Hoffman, Woodruff, Lesinski
Jonkman, Bradley, Dondero
Blackney, Bennett

MINNESOTA

Andresen, August H., Devitt, Andersen, H. Carl
O'Hara, Judd, Blatnik
MacKinnon, Knutson, Hagen

MISSISSIPPI

Rankin, Abernethy, Colmer
Whitten, Winstead, Williams
Whittington

MISSOURI

Arnold, Bennett, Bakewell
Schwabe, Short, Ploeser
Cole, Banta, Karsten
Bell, Cannon
Reeves, Zimmerman

MONTANA

Mansfield, D'Ewart

NEBRASKA

Curtis, Stefan, Miller
Buffett

NEVADA

Russell

NEW HAMPSHIRE

Merrow, Cotton

NEW JERSEY

Wolverton, Case, Sundstrom
Hand, Thomas, Kean
Auchincloss, Canfield, Norton
Mathews, Towe, Hart
Eaton, Hartley

NEW MEXICO

Fernandez, Lusk

NEW YORK

Macy, Buck, Byrne
Hall, Leonard W., Coudert, Taylor
Marcantonio, Kilburn
Latham, Klein, Fuller
McMahon, Bloom, Riehlman
Ross, Javits, Hall, Edwin Arthur
Nodar, Powell, Taber
Delaney, Lynch, Cole
Pfeifer, Rabin, Keating
Keogh, Buckley, Wadsworth
Somers, Potts, Andrews
Heffernan, Gwinn, Elsaesser
Rooney, Gamble, Butler
O'Toole, St. George, Reed
Rayfiel, LeFevre
Celler, Kearney

NORTH CAROLINA

Bonner, Folger, Doughton
Kerr, Durham, Jones
Barden, Clark, Bulwinkle
Cooley, Deane, Redden

NORTH DAKOTA

Lemke, Robertson

OHIO

Elston, Ramey, McGregor
Hess, Jenkins, Lewis
Burke, Brehm, Kirwan
Jones, Vorys, Feighan
Clevenger, Welchel, Crosser
McCowen, Huber, Bolton
Brown, Griffiths, Bender
Smith, Carson

*ates or of any State or any sub-hereof, for such copies or infor-urnished for official use in con-with the official duties of such r agencies.*

353. A bill to authorize the pat-of certain public lands to the Montana or to the Board of Commissioners of Hill County, or public-park purposes.

1, lines 12 and 13, strike out "(1) lands shall be used for park and onal purposes; (2) ".

3, line 11, strike out all following ", and all of line 12 before "that".

3, line 3, after "Interior", strike semicolon, insert a period and ut balance of bill.

*red*, That the Clerk request the rence of the Senate in said bills, ly.

—

Committee of the Whole House on ate of the Union was discharged urther consideration of the bill of nate (S. 64) granting the consent gress for the construction of a dam Dan River in North Carolina, said bill was considered and read ordered to be read a third time, ad a third time by title, and passed.

*lered*, That the Clerk notify the e thereof.

—

e Committee of the Whole House on State of the Union was discharged further consideration of the bill R. 1465) to relieve collectors of cus-of liability for failure to collect in special tonnage duties and light ey, and for other purposes.

hen said bill was read by title.

n motion of Mr. TRIMBLE, by unani-s consent, the Committee on the Ju-ary was discharged from further sideration of the bill of the Senate 132) to relieve collectors of customs liability for failure to collect certain cial tonnage duties and light money, for other purposes, when said bill s considered and read twice, ordered be read a third time, was read a third ne by title, and passed.

*Ordered*, That the Clerk notify the nate thereof.

By unanimous consent, the bill H. R. 65, a similar House bill, was laid on the ble.

—

The Committee of the Whole House n the State of the Union was discharged rom further consideration of the bill H. R. 2076) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unani-mous consent, the bill of the Senate (S. 73) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quar-terly accounts of fiscal officers, and for other purposes, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered*, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2076, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2238) to amend section 327 (h) of the Nationality Act of 1940.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unani-mous consent, the bill of the Senate (S. 460) to amend section 327 (h) of the Nationality Act of 1940, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered*, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2238, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1999) to authorize additional al-lowances of good time and the payment of compensation to prison inmates per-forming exceptionally meritorious or outstanding services.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unani-mous consent, the bill of the Senate (S. 534) to authorize additional allow-ances of good time and the payment of compensation to prison inmates per-forming exceptionally meritorious or outstanding services, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered*, That the Clerk notify the Senate thereof.

By unanimous consent the bill H. R. 1999, a similar House bill, was laid on the table.

The bill (H. R. 797) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project was read by title.

On motion of Mr. TRIMBLE, by unani-mous consent, the bill of the Senate (S. 214) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project, was taken from the Speaker's table, con-sidered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered*, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 797, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 146) to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Reg-istration Act, 1940, to increase the pen-alties for violation of such acts.

When said bill was considered and read twice.

Mr. SPRINGER submitted the fol-lowing amendments, which were agreed to:

Page 1, line 4, after "follows:", insert *Strike the word "six" where it appears in section 1 (a) and substitute in lieu thereof the word "seven;"*.

Page 1, line 4, strike out "Renumber" and insert *renumber*.

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered*, That the Clerk request the concurrence of the Senate in said bill.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2083) to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights."

When said bill was considered and read twice.

The following amendments, recom-mended by the Committee on the Judi-ciary, were agreed to:

Page 21, line 19, strike out "June 3" and insert *June 18*.

Page 34, line 9, strike out comma after "Puerto Rico" and "and the courts of first instance of the Philippine Islands".

Page 34, line 18, strike out "bill in equity" and insert *complaint*.

Page 39, line 22, strike out "March 2, 1913" and insert *July 1, 1909*.

Mr. ROBSION submitted the following amendment, which was agreed to:

Page 41, lines 8 and 9, strike out "and not exceeding $1 per annum for the cata-logs issued during the year for any one class of subjects".

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered*, That the Clerk request the concurrence of the Senate in said bill

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Crimi-nal Procedure."

When said bill was considered and read twice.

Mr. WALTER submitted the following amendment, which was agreed to:

Page 434, line 11, after "of", strike out "three" and insert *five*.

Case 3:08-cv-04045-MHP Document 1 Filed 08/25/2008 Page 31 of 48

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

*Ordered*, That the Clerk request the concurrence of the Senate in said bill.

BILLS PASSED OVER

By unanimous consent, bills of the following titles were severally passed over without prejudice and retain their places on the Consent Calendar:

S. 26. An act to make criminally liable persons who negligently allow prisoners in their custody to escape.

S. 321. An act to amend section 17 of the Pay Readjustment Act of 1942, so as to increase the pay of cadets and midshipmen at the service academies, and for other purposes.

H. R. 174. A bill to amend section 26, title I, chapter 1, of the act entitled "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900 (31 Stat. 321), as amended by the act of May 31, 1938 (52 Stat. 588).

H. R. 673. A bill to repeal certain provisions authorizing the establishing of priorities in transportation by merchant vessels.

H. R. 966. A bill to amend section 14 of the Veterans' Preference Act of June 27, 1944 (58 Stat. 387).

H. R. 2229. A bill to amend the act of June 25, 1938, relating to the appointment of postmasters under civil service.

H. R. 2759. A bill to amend the Interstate Commerce Act, as amended, so as to provide limitations on the time within which actions may be brought for the recovery of undercharges and overcharges by or against common carriers by motor vehicle, common carriers by water, and freight forwarders.

H. R. 3214. A bill to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

BILLS OBJECTED TO

One objection being made to the consideration of the bill (H. R. 1556) to provide basic authority for the performance of certain functions and activities of the Bureau of Reclamation, said bill was passed over on the Consent Calendar, under the rule.

Three objections being made to the consideration of the joint resolution (H. J. Res. 152) relating to the marketing of Virginia sun-cured tobacco under the Agricultural Adjustment Act of 1938, as amended, said bill was stricken from the Consent Calendar.

Motions severally made to reconsider the votes whereby each bill and joint resolution on the Consent Calendar was disposed of today were, by unanimous consent, severally laid on the table.

COMMITTEE ON ARMED SERVICES

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 141):

*Resolved*, That the Committee on Armed Services, acting as a whole or by subcommittee, is authorized and directed to conduct thorough studies and investigations relating to matters coming within the jurisdiction of such committee under rule XI (1) (c) of the Rules of the House of Representatives, and for such purposes the said committee or any subcommittee thereof is authorized to sit and act during the present session of Congress at such times and places, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena or otherwise the attendance and testimony of such witnesses and the production of such books, records, papers, and documents, as it deems necessary. Subpenas may be issued over the signature of the chairman of the committee, or by any member designated by such chairman, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses.

The committee shall report to the House of Representatives during the present session of Congress the results of its studies and investigations with such recommendations for legislation or otherwise as the committee deems desirable.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agred to was, by unanimous consent, laid on the table.

COMMITTEE ON PUBLIC LANDS

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 93):

*Resolved*, That the Committee on Public Lands (now comprised of the six former Committees on Insular Affairs, Territories, Public Lands, Irrigation and Reclamation, Mines and Mining, and Indian Affairs) may make investigations into any matter within its jurisdiction. For the purpose of making such investigations the committee, or any subcommittee thereof, is authorized to sit and act during the present Congress at such times and places within or outside the United States, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require, by subpena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any member of the committee designated by him, and may be served by any person designated by such chairman or member.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 153):

*Resolved*, That, effective from January 3, 1947, the Committee on Interstate and Foreign Commerce, or any duly authorized subcommittee thereof, is authorized to continue the investigation begun under authority of House Resolution 318 of the Seventy-ninth Congress, and for such purposes shall have the same power and authority as that conferred by such House Resolution 318. The committee may from time to time make such preliminary reports to the House as it deems advisable; and shall, during the present Congress, report to the House the results of its investigation, together with such recommendations as it deems advisable. Any report submitted when the House is not in session shall be filed with the Clerk of the House.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to, was, by unanimous consent, laid on the table.

ENROLLED BILLS SIGNED

Mr. LECOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 450. An act providing for the conveyance to the town of Marblehead in the State of Massachusetts, of Marblehead Military Reservation for public use

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

ENROLLED SENATE JOINT RESOLUTION SIGNED

The SPEAKER announced his signature to an enrolled joint resolution of the Senate of the following title:

S. J. Res. 102. Joint resolution to permit United States common comunications carriers to accord free communication privileges to official participants in the world telecommunications conferences to be held in the United States in 1947.

LEAVE TO ADDRESS THE HOUSE

On motion of Mr. BENNETT of Missouri, by unanimous consent,

Secretary of War inactivating the United States Army post at Camp McCoy and requesting that steps be taken to prevent such order from taking effect; to the Committee on Armed Services.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. EBERHARTER:

H. R. 3424. A bill for the relief of Mrs. Mitsu Yajima; to the Committee on the Judiciary.

By Mr. EVINS:

H. R. 3425. A bill for the relief of the Lebanon Woolen Mills, Inc.; to the Committee on the Judiciary.

H. R. 3426. A bill for the relief of Mr. and and Mrs. Lem Motlow; to the Committee on the Judiciary.

H. R. 3427. A bill for the relief of Mrs. Mary H. Overall and Thomas I. Baker; to the Committee on the Judiciary.

By Mr. FOGARTY:

H. R. 3428. A bill granting an annuity to Emma June Wilbur; to the Committee on the Judiciary.

PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

488. By Mr. BRADLEY of California: Petition of Mrs. C. D. Rasmussen, of Long Beach, Calif., and 226 other residents of the Eighteenth Congressional District of California, urging favorable consideration and support of S. 265, a bill to prevent the interstate transmission of advertising of all alcoholic beverages and the broadcasting of all such advertising by means of radio; to the Committee on Interstate and Foreign Commerce.

489. By Mr. BRAMBLETT: Petition of Elmer J. Grain, Monterey, Calif., and others, regarding immediate cashing of veterans' terminal-leave bonds; to the Committee on Veterans' Affairs.

490. By Mr. HOLMES: Petitions of residents of Walla Walla, Wash., urging passage of S. 265, a bill to prohibit transportation of alcoholic-beverage advertising and broadcasting alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

491. By Mr. LEWIS: Petition of 94 residents of Cadiz and surrounding communities, in support of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

492. By Mr. McGREGOR: Petition of citizens of Mount Vernon, Ohio (Knox County), in behalf of passage of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and the broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

493. By Mr. COTTON: Petition of the executive committee of the New Hampshire Bar Association, urging Congress to endorse H. R. 1639; to the Committee on Education and Labor.

494. By Mr. SMITH of Wisconsin; Resolution of May 8, 1947, by Kenosha Jewish Welfare Fund, Kenosha, Wis., calling upon the United States Government to take the initiative during the special meeting of the General Assembly of the United Nations in championing the program for Palestine, to insist that the Jewish people be accorded full representation in all deliberations regarding Palestine within the United Nations through the Jewish agency, and to bring weight to bear on the mandatory government to the end that an interim policy based upon the existing mandate be set in motion at once providing for immediate large-scale Jewish immigration into Palestine and the removal of discriminatory land restrictions in the Jewish national home; to the Committee on Foreign Affairs.

495. By Mr. WELCH: California State Senate Resolution No. 17, relative to the development of deposits of mineral ores in the United States; to the Committee on Public Lands.

496. Also, California State Senate Resolution No. 6, memorializing and petitioning the President and Congress of the United States to pass appropriate legislation to enable veterans who obtained guaranteed loans prior to December 28, 1945, to come within provisions of Public Law 268; to the Committee on Veterans' Affairs.

497. By the SPEAKER: Petition of officers and members of the Townsend conference from the Eighth District of the State of Massachusetts, petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16; to the Committee on Ways and Means.

498. Also, petition of members of Townsend Club, No. 2, Boston, Mass, petitioning consideration of their resolution with reference to endorsement of the Townsend plan; to the Committee on Ways and Means.

499. Also, petition of Donald F. Dooley, Janesville, Wis., and others, petitioning consideration of their resolution with reference to request for an impartial investigation of the Allis-Chalmers Manufacturing Co.'s behavior in an 11-month strike; to the Committee on Education and Labor.

TUESDAY, MAY 13, 1947

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, May 12, 1947, was read and approved.

COMMUNICATION.

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows.

675. A letter from the Director, Administrative Office of the United States Courts, transmitting a draft of a proposed bill to provide for the appointment of an additional circuit judge for the seventh judicial circuit; to the Committee on the Judiciary.

676. A letter from the Under Secretary of Agriculture, transmitting a report on the cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

677. A communication from the President of the United States, transmitting a revised estimate of appropriation for the fiscal year 1948 involving an increase of $8,850,000 for the Navy Department (H. Doc. No. 246); to the Committee on Appropriations and ordered to be printed.

CALENDAR WEDNESDAY BUSINESS DISPENSED WITH

On motion of Mr. HALLECK, by unanimous consent,

*Ordered*, That business in order for consideration on Wednesday, May 14, 1947, under clause 7, rule XXIV, the Calendar Wednesday rule, be dispensed with.

COMMITTEES GRANTED LEAVE TO SIT

By unanimous consent, committees were granted leave to sit during general debate in the House, as follows:

Committee on Interstate and Foreign Commerce, for today;

Committee on Banking and Currency, for today; and

Subcommittee No. 3 of the Committee on Merchant Marine and Fisheries, tomorrow.

BILLS PRESENTED TO THE PRESIDENT

Mr. LECOMPTE, from the Committee of House Administration, reported that that committee did on May 12, 1947, present to the President, for his approval, bills of the House of the following titles:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation, for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

STATE, JUSTICE, AND COMMERCE, AND JUDICIARY APPROPRIATION BILL, 1948

Mr. STEFAN moved that the House resolve itself into the Committee of the Whole House on the State of the Union for the consideration of the bill (H. R. 3311) making appropriations for the Departments of State, Justice, and Commerce, and the Judiciary, for the fiscal year ending June 30, 1948, and for other purposes.

Pending which,

On motion of Mr. STEFAN, by unanimous consent,

*Ordered*, That the time for general debate run on today, be equally divided

# JOURNAL OF THE SENATE

OF THE

# UNITED STATES OF AMERICA

---

## FIRST SESSION

OF THE

## EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 3, 1947, IN THE ONE HUNDRED
AND SEVENTY-FIRST YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1948

# JOURNAL OF THE SENATE OF THE UNITED STATES OF AMERICA

Eightieth Congress, First Session : : : Beginning January 3, 1947

The FIRST SESSION of the EIGHTIETH CONGRESS commenced this day, conformably to the Constitution of the United States, and the Senate met in its Chamber at the city of Washington.

FRIDAY, JANUARY 3, 1947

The office of President pro tempore being vacant by expiration of the term of Hon. KENNETH D. MCKELLAR as Senator from the State of Tennessee,

The Secretary of the Senate (Hon. Leslie L. Biffle), under rule I, paragraph 2, called the Senate to order, and the Chaplain, Rev. Frederick Brown Harris, D. D., of Washington, D. C., offered prayer.

SENATOR-ELECT FROM KENTUCKY

The Secretary laid before the Senate the credentials of JOHN SHERMAN COOPER, duly chosen a Senator by the qualified electors of the State of Kentucky on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the resignation of Hon. Albert Benjamin Chandler; which were ordered to be placed on file.

SENATOR-ELECT FROM IDAHO

The Secretary laid before the Senate the credentials of HENRY DWORSHAK, duly chosen a Senator by the qualified electors of the State of Idaho on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. John Thomas; which were ordered to be placed on file.

SENATOR-ELECT FROM VIRGINIA

The Secretary laid before the Senate the credentials of A. WILLIS ROBERTSON, duly chosen a Senator by the qualified electors of the State of Virginia on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. Carter Glass; which were ordered to be placed on file.

SENATOR-ELECT FROM ALABAMA

The Secretary laid before the Senate the credentials of JOHN SPARKMAN, duly chosen a Senator by the qualified electors of the State of Alabama on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. John H. Bankhead; which were ordered to be placed on file.

CREDENTIALS OF SENATORS-ELECT FOR 6-YEAR TERM

The credentials of the following Senators-elect, duly chosen by the qualified electors of their respective States for the term of 6 years beginning January 3, 1947, were laid before the Senate by the Secretary, and ordered to be placed on file:

Mr. RAYMOND E. BALDWIN, from the State of Connecticut;

Mr. THEODORE GILMORE BILBO, from the State of Mississippi;

Mr. OWEN BREWSTER, from the State of Maine;

Mr. JOHN W. BRICKER, from the State of Ohio;

Mr. HUGH BUTLER, from the State of Nebraska;

Mr. HARRY F. BYRD, from the State of Virginia;

Mr. HARRY P. CAIN, from the State of Washington;

Mr. DENNIS CHAVEZ, from the State of New Mexico;

Mr. TOM CONNALLY, from the State of Texas;

Mr. ZALES N. ECTON, from the State of Montana;

Mr. RALPH E. FLANDERS, from the State of Vermont;

Mr. SPESSARD L. HOLLAND, from the State of Florida;

Mr. IRVING M. IVES, from the State of New York;

Mr. WILLIAM E. JENNER, from the State of Indiana;

Mr. JAMES P. KEM, from the State of Missouri;

Mr. HARLEY M. KILGORE, from the State of West Virginia;

Mr. WILLIAM F. KNOWLAND, from the State of California;

Mr. WILLIAM LANGER, from the State of North Dakota;

Mr. HENRY CABOT LODGE, Jr., from the State of Massachusetts;

Mr. GEORGE W. MALONE, from the State of Nevada;

Mr. EDWARD MARTIN, from the State of Pennsylvania;

Mr. JOSEPH R. MCCARTHY, from the State of Wisconsin;

Mr. ERNEST W. MCFARLAND, from the State of Arizona;

Mr. J. HOWARD MCGRATH, from the State of Rhode Island and Providence Plantations;

Mr. KENNETH D. MCKELLAR, from the State of Tennessee;

Mr. HERBERT R. O'CONOR, from the State of Maryland;

Mr. JOSEPH C. O'MAHONEY, from the State of Wyoming;

Mr. H. ALEXANDER SMITH, from the State of New Jersey;

Mr. EDWARD J. THYE, from the State of Minnesota;

Mr. ARTHUR H. VANDENBERG, from the State of Michigan;

Mr. ARTHUR V. WATKINS, from the State of Utah; and

Mr. JOHN J. WILLIAMS, from the State of Delaware.

SENATOR-ELECT FROM CONNECTICUT

The Secretary laid before the Senate the credentials of RAYMOND E. BALDWIN, duly chosen a Senator by the qualified electors of the State of Connecticut on November 5, 1946, to fill the vacancy in the term ending January 3, 1947, caused by the death of Hon. Francis Maloney; which were ordered to be placed on file.

SENATOR-DESIGNATE FROM VERMONT

The Secretary laid before the Senate the credentials of RALPH E. FLANDERS, duly appointed a Senator by the Governor of Vermont on November 1, 1946, to represent said State in the Senate of the United States for the term ending January 3, 1947, to fill the vacancy caused by the resignation of Hon. Warren R. Austin; which were ordered to be placed on file.

SENATOR-ELECT FROM CALIFORNIA

The Secretary laid before the Senate the credentials of WILLIAM F. KNOWLAND, duly chosen a Senator by the qualified electors of the State of California on November 5, 1946, to fill the vacancy in the term ending January 3, 1947, caused by the death of Hon. Hiram W. Johnson; which were ordered to be placed on file.

SENATOR-ELECT FROM OHIO

The Secretary laid before the Senate the credentials of KINGSLEY A. TAFT, duly chosen a Senator on November 5, 1946, by the qualified electors of the State of Ohio, to fill the vacancy in the term ending January 3, 1947, caused by the

(c) The expenses of the committee, which shall not exceed $ , shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers signed by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

FEDERAL LABOR RELATIONS ACT OF 1947

The Senate resumed the consideration of the bill (S. 1126) to amend the National Labor Relations Act, to provide additional facilities for the mediation of labor disputes affecting commerce, to equalize legal responsibilities of labor organizations and employers, and for other purposes.

The question being on agreeing to the amendment proposed by Mr. MURRAY (for himself and others) as a substitute for the bill, as amended,

Pending debate,

On motion by Mr. LANGER to further amend the bill by inserting on page 6, after line 24, provisions defining the terms "superintendent" and "assistant superintendent",

Pending debate,

MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed each without amendment the following bills of the Senate:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project.

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The House has passed the following bills in which it requests the concurrence of the Senate:

H. R. 84. An act to amend the Nationality Act of 1940, as amended;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 1179. An act to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947;

H. R. 1203. An act to provide compensation to persons performing the duties of postmasters at post offices of the fourth class during annual and sick leave of the postmasters;

H. R. 1237. An act to regulate the marketing of economic poisons and devices, and for other purposes;

H. R. 1362. An act to permit certain naval personnel to count all active service rendered under temporary appointment as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officer in the United States Navy or the United States Marine Corps, respectively;

H. R. 1371. An act to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes;

H. R. 1412. An act to grant to the Arthur Alexander Post, No. 68, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938;

H. R. 1467. An act to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts;

H. R. 1565. An act to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions";

H. R. 1566. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States";

H. R. 1567. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds";

H. R. 1874. An act to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes;

H. R. 2054. An act to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service;

H. R. 2083. An act to codify and enact into positive law title 17 of the United States Code, entitled "Copyrights";

H. R. 2084. An act to codify and enact into positive law title 9 of the United States Code, entitled "Arbitration";

H. R. 2181. An act relating to institutional on-farm training for veterans;

H. R. 2237. An act to correct an error in section 342 (b) (8) of the Nationality Act of 1940, as amended;

H. R. 2331. An act to amend section 20a of the Interstate Commerce Act;

H. R. 2353. An act to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes;

H. R. 2368. An act to amend paragraph 8 of part VII, Veterans Regulation No. 1 (a), as amended, to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes;

H. R. 2573. An act to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis;

H. R. 2654. An act to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.;

H. R. 3029. An act to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of the United States for the District of Columbia; and

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

HOUSE BILLS REFERRED

The bills this day received from the House of Representatives for concurrence were severally read the first and second times by unanimous consent.

*Ordered*, That the bills H. R. 84, H. R. 1467, H. R. 1565, H. R. 1566, H. R. 1567, H. R. 2083, H. R. 2084, H. R. 2237, and H. R 3190 be referred to the Committee on the Judiciary;

That the bills H. R. 239, H. R. 2054, H. R. 2331, and H. R. 2654 be referred to the Committee on Interstate and Foreign Commerce;

That the bill H. R. 1179 be referred to the Committee on Foreign Relations;

That the bill H. R. 1203 be referred to the Committee on Civil Service;

That the bill H. R. 1237 be referred to the Committee on Agriculture and Forestry;

That the bills H. R. 1362 and 1371 be referred to the Committee on Armed Services;

MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives insists upon its amendments to the bill (S. 938) to provide for assistance to Greece and Turkey; it agrees to the conference asked by the Senate on the disagreeing votes of the two Houses thereon, and has appointed Mr. EATON, Mr. MUNDT, Mr. JONKMAN, Mr. BLOOM, and Mr. KEE managers at the same on its part.

RELIEF TO PEOPLE OF COUNTRIES DEVASTATED BY WAR

The Senate resumed the consideration of the joint resolution (H. J. Res. 153) providing for relief assistance to the people of countries devastated by war.

The question being on agreeing to the reported amendment, as amended, striking out all after the resolving clause and inserting in lieu thereof other words,

Pending debate,

SENATORS EXCUSED FROM ATTENDANCE

The following-named Senators, on their own request, were excused from attendance upon the Senate for the periods indicated:

Mr. LANGER, for 1 week;

Mr. CAPEHART, until Monday next;

Mr. FLANDERS, for the balance of the week;

Mr. STEWART, for a few days; and

Mr. MCCARRAN, for 2 weeks.

EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted by unanimous consent, as in executive session.

RECESS

On motion by Mr. WHITE, at 7 o'clock and 43 minutes p. m.,

The Senate took a recess until 11 o'clock a. m. tomorrow.

WEDNESDAY, MAY 14, 1947

*(Legislative day of Monday, April 21, 1947)*

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and the Chaplain offered prayer.

JOURNAL

On motion by Mr. WHITE, and by unanimous consent,

The Journal of the proceedings of Tuesday, May 13, 1947, was approved.

MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Swanson, one of its clerks:

*Mr. President:* The Speaker of the House of Representatives having signed six enrolled bills, viz. S. 64, S. 132, S. 214, S. 273, S. 460, and S. 534, I am directed to bring the same to the Senate for the signature of its President.

The President of the United States has informed the House that he approved and signed the following acts:

On April 16, 1947:

H. R. 1943. An act to establish a permanent Nurse Corps of the Army and the Navy and to establish a Women's Medical Specialist Corps in the Army.

On April 25, 1947:

H. R. 731. An act to establish the Theodore Roosevelt National Memorial Park; to erect a monument in memory of Theodore Roosevelt in the village of Medora, N. Dak., and for other purposes.

On April 29, 1947:

H. R. 2404. An act to suspend certain import taxes on copper.

On May 1, 1947:

H. R. 2849. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1947, and for other purposes.

ENROLLED BILLS SIGNED

The Secretary reported that he had examined and found truly enrolled the following bills:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project;

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The PRESIDENT pro tempore thereupon signed the same.

QUESTION OF QUORUM

Mr. WHITE raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Eighty-four Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Downey | Jenner |
| Ball | Dworshak | Johnson, Colo. |
| Barkley | Eastland | Johnston, S. C. |
| Brewster | Ecton | Kem |
| Bricker | Ellender | Kilgore |
| Bridges | Ferguson | Knowland |
| Brooks | Fulbright | Lodge |
| Buck | George | Lucas |
| Bushfield | Green | McCarthy |
| Butler | Gurney | McClellan |
| Byrd | Hatch | McFarland |
| Cain | Hawkes | McGrath |
| Capper | Hayden | McKellar |
| Chavez | Hickenlooper | McMahon |
| Connally | Hill | Magnuson |
| Cooper | Hoey | Malone |
| Cordon | Holland | Martin |
| Donnell | Ives | Maybank |
| Millikin | Robertson, Va. | Tydings |
| Moore | Robertson, Wyo. | Umstead |
| Morse | Russell | Vandenberg |
| Murray | Saltonstall | Watkins |
| Myers | Smith | Wherry |
| O'Conor | Sparkman | White |
| O'Daniel | Taft | Wiley |
| O'Mahoney | Taylor | Williams |
| Pepper | Thomas, Okla. | Wilson |
| Reed | Thye | Young |

A quorum being present,

COMMITTEES AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The following committees were authorized to sit during the session of the Senate, on today:

A subcommittee of the Committee on the Judiciary considering a nomination, and another subcommittee of the same committee considering S. 104; on the request of Mr. WILEY; and

The Committee on Rules and Administration; on the request of Mr. BROOKS.

SENATORS EXCUSED FROM ATTENDANCE

Mr. CAIN and Mr. HATCH, on their own request, were excused from attendance upon the Senate for tomorrow.

REPORT ON COOPERATION OF UNITED STATES WITH MEXICO IN CONTROL AND ERADICATION OF FOOT-AND-MOUTH DISEASE

The PRESIDENT pro tempore laid before the Senate a communication from the Under Secretary of Agriculture, transmitting, pursuant to law, a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease, under the act of February 28, 1947, for the 30-day period ended April 29, 1947; which, with the accompanying report, was referred to the Committee on Agriculture and Forestry.

TRANSFER OF NAVY VESSEL

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of the Navy, transmitting, pursuant to law, a report of the transfer of the U. S. S. *Texas* to the State of Texas under the provisions of section 1 of the act of August 7, 1946; which was referred to the Committee on Armed Services.

EXPORT-IMPORT BANK OF WASHINGTON AUDIT REPORTS OF 1945 AND 1946

The PRESIDENT pro tempore laid before the Senate two communications from the Comptroller General of the United States, transmitting, pursuant to law, two audit reports of the Export-Import Bank of Washington for the fiscal years ended June 30, 1945, and 1946, respectively; which, with the accompanying reports, were referred to the Committee on Expenditures in the Executive Departments.

SUPPLEMENTAL ESTIMATE OF APPROPRIATION

The PRESIDENT pro tempore laid before the Senate a communication from the President of the United States, together with a letter from the Acting Director of the Bureau of the Budget, transmitting, pursuant to law, supplemental estimates of appropriations for

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Addition of certain surplus Federal lands to the Chickamauga and Chattanooga Military Park, Ga., and Tenn. | H. R. 5936 | Mar. 22 | PL | IIA | May 5 | June 11 | 1862 | 1600 | 5995 | 7944 | May 18 | June 12 | June 24 | 764 |
| To amend the Standard Time Act relative to placing a certain portion of the State of Idaho in the third time zone. | H. R. 6318 (S. 2547) | Apr. 22 | IFC* | IFC | May 12 | May 13 | 1948 | 1287 | 6010 | 8239 | May 18 | June 15 | June 24 | 765 |
| National military appropriations for 1949 | H. R. 6771 | June 2 | App* | App* | June 2 | June 17 | 2135 | 1763 | 6957 | 8618 | June 2 | June 17 | June 24 | 766 |
| To extend for 1 year the terms of two additional Assistant Secretaries of State. | H. R. 6822 (S. 2869) | June 7 | FA | FR | June 8 | June 15 | 2257 | 1683 | 8489 | 8727 | June 16 | June 18 | June 24 | 767 |
| To provide annuities for certain surviving spouses of annuitants retired prior to Apr. 1, 1948. | H. R. 6641 (S. 2740) | May 20 | POCS | POCS | June 11 | June 15 | 2309 | 1685 | 8494 | 8728 | June 16 | June 18 | June 25 | 768 |
| To authorize free entry of certain railroad equipment under certain conditions from France. | H. J. Res. 433 | June 18 | WM | | | | | | 9222 | 9098 | June 19 | June 19 | June 25 | 769 |
| Confirming certain oil contracts negotiated by Treasury. | H. R. 4659 (S. 1857) | Dec. 8, 1947 | Jud | BC | May 28 | June 9 | 2077 | 1560 | 7390 | 7930 | June 8 | June 12 | June 25 | 770 |
| To codify Title 3 of the United States Code, entitled "The President." | H. R. 6412 | Apr. 30 | Jud | Jud | May 10 | June 14 | 1898 | 1623 | 6000 | 8722 | May 18 | June 18 | June 25 | 771 |
| To codify Title 18 of the United States Code entitled "Crimes and Criminal Procedure." | H. R. 3190 | Apr. 24, 1947 | Jud | Jud | Apr. 24, 1947 | June 14 | 304 | 1620 | 5048 | 8722 | May 12, 1947 | June 18 | June 25 | 772 |
| To codify Title 28 of the United States Code, entitled "Judicial Code and Judiciary." | H. R. 3214 | Apr. 25, 1947 | Jud | Jud | Apr. 25, 1947 | June 9 | 308 | 1559 | 8392 | 7930 | July 7, 1947 | June 12 | June 25 | 773 |
| To authorize admission of displaced persons. | S. 2242 (H. R. 6396) | Mar. 2 | Jud* | Jud | May 4 | Mar. 2 | 1854 | 950 | 7888 | 6916 | June 11 | June 2 | June 25 | 774 |
| To provide for military justice within the Air Force. | S. 2401 (H. R. 5937) | Mar. 29 | AS | AS | June 8 | June 8 | 2263 | 1542 | 8492 | 7925 | June 16 | June 12 | June 25 | 775 |
| To amend the Organic Act of Puerto Rico | S. 2675 | May 17 | PL | IIA | June 4 | May 27 | 2210 | 1418 | 8484 | 6782 | June 16 | June 1 | June 25 | 776 |
| Fixing the rank of the assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements. | S. 2770 (H. R. 6751) | May 26 | AS | AS | June 8 | June 2 | 2256 | 1451 | 8498 | 7696 | June 16 | June 10 | June 25 | 777 |
| Increasing the sum to $30,000 for statue of Commodore John Barry for presentation to Eire. | H. J. Res. 297 | Jan. 15 | FA | FR | May 18 | June 17 | 1972 | 1760 | 7381 | 8754 | June 8 | June 18 | June 25 | 778 |
| Relative to pay of jurors in the United States courts. | H. R. 945 (S. 19) | Jan. 14, 1947 | Jud | Jud* | June 2 | June 7 | 2162 | 1510 | 7418 | 7945 | June 8 | June 12 | June 25 | 779 |
| Relative to probation system in United States courts. | H. R. 2766 | Mar. 25, 1947 | Jud | Jud | May 11 | June 8 | 1923 | 1544 | 6007 | 7926 | May 18 | June 12 | June 25 | 780 |
| Authorizing certain expenditures from appropriations of the Public Health Service. | H. R. 4114 | July 8, 1947 | IFC | LPW | May 11 | June 9 | 1927 | 1578 | 6008 | 7933 | May 18 | June 12 | June 25 | 781 |
| Army-civil functions appropriations for 1949. | H. R. 5524 | Feb. 24 | App* | App* | Feb. 24 | Apr. 23 | 1420 | 1167 | 1772 | 6096 | Feb. 26 | May 19 | June 25 | 782 |
| To amend the Nationality Act of 1940 relative to petition for citizenship. | H. R. 5886 | Mar. 17 | Jud | Jud | Apr. 6 | June 15 | 1661 | 1641 | 6012 | 8723 | May 18 | June 18 | June 25 | 783 |
| Providing that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives. | H. R. 6293 | Apr. 21 | POCS | POCS | May 11 | June 15 | 1938 | 1687 | 7380 | 8727 | June 8 | June 18 | June 25 | 784 |
| Second deficiency appropriations for 1948. | H. R. 6935 | June 15 | App* | App* | June 15 | June 19 | 2348 | 1769 | 8461 | 9054 | June 16 | June 19 | June 25 | 785 |
| Authorizing the Coast Guard to maintain aids to navigation. | S. 1853 | Dec. 10, 1947 | MMF | IFC* | May 7 | Mar. 31 | 1878 | 1043 | 5996 | 4288 | May 18 | Apr. 12 | June 26 | 786 |
| Relating to yachts belonging to yacht clubs | S. 2186 | Feb. 20 | MMF | IFC | June 17 | May 27 | 2397 | 1415 | 8957 | 6781 | June 18 | June 1 | June 26 | 787 |
| Acceptance of statue of Gen. Jose Gervasio Artigas from Uruguay. | S. 2591 | Apr. 30 | HA | PW | June 18 | June 2 | 2402 | 1439 | 8837 | 7693 | June 18 | June 10 | June 26 | 788 |
| Authorizing the printing and binding of Cannon's House Procedure. | H. J. Res. 190 | May 6, 1947 | HA | RAdm | May 14, 1947 | June 19 | 382 | 1770 | 5279 | 9056 | May 14, 1947 | June 19 | June 26 | 789 |
| To authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems. | H. R. 3218 | Apr. 25, 1947 | PL | IIA | July 10, 1947 | June 4 | 860 | 1493 | 317 | 7701 | Jan. 19 | June 10 | June 26 | 790 |
| Authorizing permanent appointment in each the Regular Army and Regular Air Force of one officer in the grade of general. | H. R. 6039 | Mar. 30 | AS | AS | Apr. 14 | June 17 | 1734 | 1764 | 4644 | 8755 | Apr. 20 | June 18 | June 26 | 791 |

*Printed hearings.

94 Cong. Rec D557

App. (20)

HISTORY OF BILLS ENACTED INTO PUBLIC LAW (80TH CONG., 2D SESS.)—Continued

| Title | Bill No. | Date introduced | Committees—hearings | | Date reported | | Report No. | | Page of Congressional Record of passage | | Date of passage | | Public law | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | House | Senate | House | Senate | House | Senate | House | Senate | House | Senate | Date approved | No. |
| To amend the Railroad Retirement Act of 1937, to increase certain annuities, and the Railroad Unemployment Insurance Act with respect to taxes levied thereunder. | H. R. 6766 (S. 2782) | June 1 | IFC* | LPW | June 2 | June 9 | 2154 | 1574 | 7436 | 7933 | June 8 | June 12 | June 23 | 744 |
| Amending District of Columbia Code, relative to admissibility of testimony. | S. 1266 | May 12, 1947 | DC | DC | June 3 | May 29, 1947 | 2188 | 212 | 7455 | 7010 | June 8 | June 16, 1947 | June 24 | 745 |
| To increase salary of Coordinator of Federal Agencies in Puerto Rico. | S. 2508 | Apr. 15 | PL | IIA | June 4 | May 12 | 2208 | 1279 | 8484 | 6294 | June 16 | May 24 | June 24 | 746 |
| Permitting mining locations under United States mining laws within the game sanctuary of the Harney National Forest. | H. R. 2867 | Mar. 31, 1947 | PL | IIA | July 14, 1947 | June 11 | 912 | 1597 | 9596 | 7944 | July 21, 1947 | June 12 | June 24 | 747 |
| To amend Veterans Regulation No. 1 (a), pts. I and II, to establish a presumption of service connection for chronic and tropical diseases. | H. R. 3889 | June 18, 1947 | VA | Fin* | July 8, 1947 | June 7 | 808 | 1536 | 9609 | 7924 | July 21, 1947 | June 12 | June 24 | 748 |
| To amend the Food and Drug Act, to authorize seizure of adulterated or misbranded products. | H. R. 4071 | July 2, 1947 | IFC | IFC* | July 8, 1947 | Apr. 30 | 807 | 1221 | 134 | 8239 | Jan. 13 | June 15 | June 24 | 749 |
| To permit free entry of crude or broken limestone to be used in manufacture of fertilizer. | H. R. 5275 | Feb. 4 | WM | Fin | Feb. 23 | Apr. 15 | 1415 | 1129 | 1610 | 8238 | Feb. 24 | June 15 | June 24 | 750 |
| Conferring jurisdiction over Fort Des Moines Veterans' Village upon the State of Iowa. | H. R. 6188 | Apr. 12 | PW* | PW | Apr. 15 | June 10 | 1747 | 1585 | 5199 | 7941 | May 3 | June 12 | June 24 | 751 |
| Relative to admission of Filipinos to the U. S. Naval Academy. | H. R. 6698 | May 25 | AS* | AS | June 8 | June 17 | 2258 | 1766 | 8489 | 8755 | June 16 | June 18 | June 24 | 752 |
| Navy appropriations for 1949 | H. R. 6772 | June 2 | App* | App* | June 2 | June 14 | 2135 | 1621 | 7073 | 8301 | June 3 | June 15 | June 24 | 753 |
| To ratify contract for purchase of certain mineral land from the Choctaw and Chickasaw Indians. | S. J. Res. 203 (H. J. Res. 363) | Apr. 2 | PL | IIA | May 5 | May 10 | 1868 | 1266 | 8214 | 6290 | June 14 | May 24 | June 24 | 754 |
| Providing for a National Institute of Dental Research. | H. R. 6726 (S. 176) | May 27 | IFC* | LPW | June 2 | July 7, 1947 | 2158 | 436 | 7415 | 7934 | June 8 | June 12 | June [illegible] | 755 |
| To provide for the issuance of free passes on railroads to official watch inspectors. | S. 2192 | Feb. 20 | IFC | IFC | June 17 | June 8 | 2394 | 1538 | 8954 | 7924 | June 18 | June 12 | June [illegible] | 756 |
| To increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act. | S. 2237 (H. R. 6647) | Feb. 27 | EdL | LPW* | June 1 | May 17 | 2095 | 1315 | 7397 | 6302 | June 8 | May 24 | June 24 | 757 |
| To clarify the position of Air Force Secretary and to authorize Secretaries of Army, Navy, Air Force, and Secretary of Defense to establish certain positions in professional and scientific service. | S. 2505 | Apr. 15 | POCS | AS | June 11 | May 26 | 2306 | 1408 | 8494 | 6778 | June 16 | June 1 | June 24 | 758 |
| Selective Service Act of 1948 | S. 2655 (H. R. 6401) | May 12 | AS | AS* | May 7 | May 12 | 1881 | 1268 | 8828 | 7681 | June 18 | June 10 | June 24 | 759 |
| To authorize lease of certain space in Lafayette Building in the District of Columbia by FWA. | S. 2706 | May 19 | | PW | | June 12 | | 1614 | 8947 | 8721 | June 18 | June 18 | June 24 | 760 |
| Relative to consolidation of the Lighthouse Service with the Coast Guard. | H. R. 239 | Jan. 3, 1947 | MMF | IFC | Apr. 23, 1947 | June 11 | 294 | 1394 | 5055 | 7942 | May 12, 1947 | June 12 | June 24 | 761 |
| Providing pensions for certain widows of Spanish-American War veterans. | H. R. 4962 | Jan. 14 | VA | Fin | June 11 | June 17 | 2316 | 1747 | 8495 | 8754 | June 16 | June 18 | June 24 | 762 |
| To authorize Marine Band attendance at 1948 national assembly of the Marine Corps League. | H. R. 5036 (S. 2064) | Jan. 20 | AS* | AS | June 2 | June 8 | 2150 | 1541 | 7414 | 7926 | June 8 | June 12 | June 24 | 763 |

94 Cong. Rec. D556

App. 21


*National Archives and Records Administration*

*700 Pennsylvania Avenue, NW*
*Washington, DC 20408-0001*

October 5, 2006

[redacted]
P.O. Box 2068
Inez, KY 41224

Dear Mr. [redacted]

This is in reply to your letter of September 19, 2006, invoking the Freedom of Information Act repeating your three requests from your letter of September 5, 2006. Because records of Congress are except from the provisions of the Freedom of Information Act, the person who opened your letter did not log it in as a FOIA request.

It would seem that my letter to you of September 18, 2006, literally crossed in the mail.

In re-thinking your request, with this letter I enclose the front and last two pages of the House-passed bill from the 1st session of the 80th Congress. You will note that neither the second to the last page nor the back page contains the signature of John Andrews. The back page merely has a stamp: "Passed House Amended, May 12, 1947."

I have also included another copy of the photocopy that I provided you of the front and last two pages of the House-passed bill from the 2nd session of the 80th Congress. This copy, on page 471, has a page with the signature of John Andrews, attesting the initial passage in the House on May 12, 1947. The back page has the stamps that you wanted: 1) June 17, 1948, "House agrees to Senate Amendments," and 2) June 18, 1948 with the signature of the Secretary of the Senate.

As I did with your September 5, 2006, letter, I am forwarding your September 19, 2006, letter to archivist Jane Fitzgerald who works with laws that include presidential signatures. The Center for Legislative Archives does not hold the record you seek. She will reply directly.

Sincerely,

Rodney A. Ross

Rodney A. Ross
Center for Legislative Archives

Union Calendar No. 138

80TH CONGRESS
1ST SESSION

# H. R. 3190

[Report No. 304]

---

IN THE HOUSE OF REPRESENTATIVES

APRIL 24, 1947

Mr. ROBSION introduced the following bill; which was referred to the Committee on the Judiciary

APRIL 24, 1947

Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

# A BILL

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., §—", as follows:

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1941—Dec. 22.. | 618 | .......... | 55 | 853 | 18 | 521 |
| Dec. 31.. | 642 | 1-3 | 55 | 876, 877 | 18 | 503, 503, note, 504 |
| 1942—Mar. 7... | 160 | .......... | 56 | 141 | 18 | 361 |
| Mar. 10.. | 178 | 1 (part) | 56 | [62] 158 | 18 | 647 |
| Mar. 21.. | 191 | .......... | 56 | 173 | 18 | 97a |
| Mar. 27.. | 199 | 1106 | 56 | 184 | 50 App. | 641e |
| May 9... | 295 | 1 | 56 | 271, 272 | 18 | 682 |
| Aug. 24.. | 555 | 1, 2 | 56 | 747, 748 | 18 | 590a |
| Sept. 16.. | 561 | [63] 314 | ...... | .......... | 50 | 344 |
| Dec. 24.. | 823 | 1, 2, 3 | 56 | 1087 | 18 | 420f, 420g, 420h |
| Do.... | 824 | .......... | 56 | 1087, 1088 | 50 | 101 |
| 1943—June 30.. | 179 | 1 (part) | 57 | [64] 258 | 18 | 647 |
| Nov. 22. | 302 | .......... | 57 | 591 | 18 | 87 |
| 1944—Mar. 4.. | 82 | 1, 2, 3, 4 | 58 | 111 | 18 | 472, 473, 474 |
| Apr. 1... | 151 | .......... | 58 | 149, 150 | 18 | 282a |
| Apr. 4... | 162 | .......... | 58 | 188 | 18 | 469 |
| July 1... | 358 | 19(a)(d)(e) | 58 | 667, 668 | 41 | [65] 119 |
| Do... | 358 | 19 (b) | 58 | 667 | 18 | 590a |
| Sept. 27.. | 425 | .......... | 58 | 752 | 18 | 294 |
| Oct. 3... | 479 | 28 | 58 | 781 | 18 | 590a |
| Dec. 20.. | 623 | 4 | 58 | 837 | 12 | 1150c |
| Dec. 23.. | 706 | 1, 2, 3 | 58 | 914, 915 | 18 | 62, 62a, 62b |
| 1945—Apr. 30.. | 103 | .......... | 59 | 101 | 18 | 97b |
| May 15.. | 126 | .......... | 59 | 168 | 18 | 518a |
| June 8... | 178 | 1, 2, 3 | 59 | 234, 235 | 18 | 241, 241a, 242 |
| Sept. 24.. | 383 | 1, 2, 3 | 59 | 536 | 18 | 408 |
| 1946—May 15.. | 258 | .......... | 60 | 182 | 18 | 518a |
| July 3... | 537 | .......... | 60 | 420 | 15 | 17 note |
| | | | | | 18 | 420a-420e-1 |
| | | | | | 29 | 52 note, 101 note, 151 note |
| July 10.. | 547 | .......... | 60 | 524, 525 | 18 | 641 |
| July 24.. | 606 | .......... | 60 | 656 | 18 | 409-411 |
| Aug. 2... | 735 | .......... | 60 | 789 | 18 | 408e |
| Aug. 14.. | 964 | [66] 3 | 60 | 1064 | 7 | 1026 |

[62] First proviso, only, appearing on this page.
[63] As added by Act Apr. 1, 1944, ch. 150 (part), 58 Stat. 146.
[64] Second proviso, only, appearing on this page.
[65] First, second, third, and sixth paragraphs, only, of this section of Title 41 of the United States Code, 1940 edition.
[66] Only the provisions amending section 52 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Union Calendar No. 138

80TH CONGRESS
1ST SESSION

# H. R. 3190

[Report No. 304]

## A BILL

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

By Mr. ROBSION

APRIL 24, 1947

Referred to the Committee on the Judiciary

APRIL 24, 1947

Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

PASSED HOUSE
AMENDED
MAY 12 1947

APP- 25

80TH CONGRESS
1ST SESSION

# H. R. 3190

---

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., §—", as follows:

1st. Sess. [Engrossed H.R. 3190] App. (26)

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1946—July 10 | 547 | ---------- | 60 | 524, 525 | 18 | 641 |
| July 24 | 606 | ---------- | 60 | 656 | 18 | 409–411 |
| Aug. 2 | 735 | ---------- | 60 | 789 | 18 | 408e |
| Aug. 14 | 964 | [66] 3 | 60 | 1064 | 7 | 1026 |

[66] Only the provisions amending section 52 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Passed the House of Representatives May 12, 1947.

Attest:

John Andrews

*Clerk.*

80TH CONGRESS
1ST SESSION

# H. R. 3190

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

JUN 17 1948

(CALENDAR DAY JUN 18 1948)

House agrees to Senate amendments.

In the Senate of the United States,

JUN 18   LEG. DIV JUN 1 5 '48

Resolved, That this bill pass with amendments.

Attest:

Secretary

[CHAPTER 645]

AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

June 25, 1948
[H. R. 3190]
[Public Law 772]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., § ——", as follows:

Title 18, U. S. Code. Codification and enactment into positive law.

TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. | |
|---|---|---|---|
| I. | CRIMES | 1 | *Infra.* |
| II. | CRIMINAL PROCEDURE | 3001 | *Post*, p. 813. |
| III. | PRISONS AND PRISONERS | 4001 | *Post*, p. 847. |
| IV. | CORRECTION OF YOUTHFUL OFFENDERS | 5001 | *Post*, p. 856. |

PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |
| 75. | Passports and visas | 1541 |
| 77. | Peonage and slavery | 1581 |
| 79. | Perjury | 1621 |
| 81. | Piracy and privateering | 1651 |
| 83. | Postal service | 1691 |
| 85. | Prison-made goods | 1761 |
| 87. | Prisons | 1791 |
| 89. | Professions and occupations | 1821 |
| 91. | Public lands | 1851 |
| 93. | Public officers and employees | 1901 |
| 95. | Racketeering | 1951 |

2nd Sess. [Enrolled H.R. 3190]

[PUBLIC LAW 772]
[CHAPTER 645]

H. R. 3190

DEPARTMENT OF STATE RECEIVED JUN 25 1948

JUN 25 1948

# Eightieth Congress of the United States of America
## At the Second Session

Begun and held at the City of Washington on Tuesday, the sixth day of January, one thousand nine hundred and forty-eight

---

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

---

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., § ——", as follows:

TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. |
|---|---|---|
| I. | Crimes | 1 |
| II. | Criminal Procedure | 3001 |
| III. | Prisons and Prisoners | 4001 |
| IV. | Correction of Youthful Offenders | 5001 |

PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |

App. 30

121

H.R. 3190 as Pub. Law. 80-772

H. R. 3190—340

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

Joseph W. Martin Jr.
*Speaker of the House of Representatives.*

A. H. Vandenberg
*President of the Senate pro tempore.*

Approved
June 25 1948
Harry S. Truman
12:23 P.M. E.D.T.